[Crim. No. 1680.    Fourth Dist.    Apr. 5, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN L. NELSON, Defendant and Appellant.

Edgar G. Langford, under appointment by the District Court of Appeal, J. Perry Langford and Langford, Langford & Lane for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David W. Halpin, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (Gerald), P. J.—The defendant John L. Nelson was convicted of four crimes, two kidnappings (Pen. Code, § 207) and two rapes (Pen. Code, § 261, subd. 3). The judgment ordered the sentence for one kidnapping to run concurrently with the sentences for the other kidnapping and the two rapes, which were ordered to run consecutively.

About 9 p.m. January 17, 1964, two girls walking home from a store were accosted at gun point by a man who forced them into his car, drove a short distance and brutally raped them. They were then returned to the area of abduction and released. One of the victims had had a transistor radio, which was left in the car. The police traced a pawned transistor radio and gun to defendant Nelson. A fingerprint of the girl's father was found on the inside of the radio. The gun had been stolen from the office where Nelson was employed. On the day of the crime Nelson had borrowed a car from his employer which was similar to the car used in committing the crime. An examination of this car revealed clothing fibers, hair and blood which were similar to clothing, hair and blood of the victims. An analysis disclosed semen and blood on the pants worn by Nelson that day. Both victims identified the defendant as their assailant. Nelson's alibi was impeached by his inconsistent statements and by independent evidence.

This appeal raises two questions: (1) Whether the introduction of incriminating evidence obtained during three interrogations of Nelson by the authorities created prejudicial error; and (2) whether the judgment sentencing Nelson for four crimes is multiple punishment.

Nelson was interrogated three times by the police, once at work and twice after he was arrested two days later. Two types of damaging evidence resulted from these interrogations: (a) Inconsistent statements about the circumstances under which he acquired the gun and radio and his activities at the time of the crime;[1] and (b) information leading an officer to the automobile and Nelson's clothing which connected him with the crime.

---

[1] A prior inconsistent statement made by a defendant "although exculpating in form may prove highly incriminating at the trial because, upon a showing of its falsity, it can constitute evidence of a consciousness of guilt." (*People* v. *Underwood*, 61 Cal.2d 113, 121 [37 Cal.Rptr. 313, 389 P.2d 937]; see also *People* v. *Atchley*, 53 Cal.2d 160, 170 [346 P.2d 764].)

■ A defendant in a criminal proceeding possesses rights to counsel and to remain silent (U.S. Const., 14th Amend.; *Gideon* v. *Wainwright,* 372 U.S. 335, 342 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733]; *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]). ■ These rights attach when the proceeding has become accusatory (*People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]); confessions and incriminating statements made by a defendant to the authorities after this stage is reached are inadmissible unless he has intelligently waived them. Necessarily, the fruits of a violation of these rights must also be excluded.[2] The objective is ". . . to prevent police tactics, which in the past, have spawned involuntary . . ." incriminating statements (*In re Lopez,* 62 Cal.2d 368, 372-373 [42 Cal.Rptr. 188, 398 P.2d 380]).

■ Confessions and incriminating statements are inadmissible under the rule enunciated in *Dorado* where certain criteria coexist: The investigation must have begun to focus on a particular suspect; the suspect must be in custody; the authorities must have carried out a process of interrogations which lends itself to eliciting incriminating statements; the authorities have not effectively informed the defendant of his rights to counsel and to remain silent, and the evidence does not establish that he has waived these rights (*People* v. *Dorado, supra,* at pp. 353, 354).

■ The record does not show, in this case, whether the defendant was advised or knew of his rights to counsel and to remain silent. *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal. Rptr. 201, 400 P.2d 97], holds under these circumstances no waiver can be presumed.

Whether error occurred in the introduction of the inconsistent statements and real evidence obtained by reason of the interrogations of Nelson depends, therefore, upon whether his rights had matured at the times they were procured.

■ The first interrogation by the police occurred at the place where Nelson worked. An investigation was being made of an unsolved crime, not yet focused on Nelson; he was not in custody. He was questioned about his acquisition of the

[2]Compare *People* v. *Ditson,* 57 Cal.2d 415 [20 Cal.Rptr. 165, 369 P.2d 714] and those cases applying the exclusionary rule to real evidence obtained as a product of an involuntary statement with *Wong Sun* v. *United States,* 371 U.S. 471 [83 S.Ct. 407, 9 L.Ed.2d 441]; *People* v. *Shelton,* 60 Cal.2d 740 [36 Cal.Rptr. 433, 388 P.2d 665] and those cases applying the exclusionary rule to real evidence obtained as the product of an unlawful arrest or search.

pawned radio and gun and was asked an account of his activities the evening of the crime; among other things, he told the officers he was driving a car similar to that used during the crime, described his wearing apparel and consented to a search of his house. This produced a shirt, introduced into evidence on which there was blood. The accusatory stage had not been reached at this interrogation. The introduction of his inconsistent, incriminating account, his shirt, and the evidence obtained from the car was admissible.

The second interrogation occurred after Nelson's arrest two days later. He was repeatedly asked an account of his activities the evening of the crime. This time his story was inconsistent with the first story in several details. He added he was not injured that evening; he disclosed where the police might find the pants he had worn; several times he repeated that he was telling the truth. The pants were located where Nelson said they would be and they produced damaging evidence. This interrogation occurred at the police station after Nelson's arrest. When an arrest occurs the defendant is in custody and the investigation has focused on him (*People* v. *Stewart*, 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97]). The evidence shows that Nelson was repeatedly questioned at this interrogation about the details of his first story given before his arrest. This interrogation produced incriminating statements because it was inconsistent with the first. It was error, therefore, to admit these statements and the real evidence obtained as a result.

The third interrogation occurred the same day. This time Nelson told the police he had lied earlier. He then gave a different account of his purchase of the radio and gun and of his activities the evening of the crime. This was his alibi at the trial except he admitted he stole the gun from his employer. The People introduced substantial independent evidence to prove this story was also false. There is some evidence to indicate Nelson requested this interrogation, but there is a lack of evidence to determine other relevant circumstances, such as the length of the interrogation, the nature of the questions asked, and the conduct of the police (see *People* v. *Stewart, supra,* 62 Cal.2d 571 at p. 579). These incriminating inconsistent statements were also inadmissible.

The real issue is whether the errors were prejudicial. "[U]nder some circumstances the introduction into evidence of statements obtained from a defendant during police interrogation in violation of his right to counsel and his right

to remain silent may constitute harmless error . . . .'' (*People v. Dorado,* 62 Cal.2d 338, 356 [42 Cal.Rptr. 169, 398 P.2d 361].) [Dictum.]

The evidence of guilt in this case is overwhelming. Nelson's alibi was thoroughly impeached by admissible evidence. Both of the victims identified Nelson as their assailant and coupled with the other admissible evidence of guilt, we conclude, after an examination of the entire cause, including the evidence, it is not reasonably probable that a more favorable result would have been reached had the errors not occurred (Cal. Const. art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]).

The second question is whether the trial court committed error in sentencing Nelson for both kidnappings and both rapes.

Penal Code, section 654 provides in part that, ''An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; . . .''

In *People* v. *Knowles,* 35 Cal.2d 175, 187 [217 P.2d 1], the Supreme Court said: ''[T]he applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been so committed that more than one statute has been violated. If only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed. . . . It is the singleness of the act and not of the offense that is determinative.''; and in *Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]: ''Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. *If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.''* [Italics ours.]

In *People* v. *Bynes,* 223 Cal.App.2d 268 [35 Cal.Rptr. 633], a woman was abducted by four men as she walked across a parking lot, driven to a secluded spot, raped and released. In that case the court concluded that ''the kidnaping and rape constituted a continuous course of conduct for the sole accomplishment of the rape. . . .'' (*Id.* at p. 272.)

Here the defendant had been following the girls in his car while they walked down the street. He approached

them with a gun threatening to kill them if they ran. He stated clearly that his intention was to engage in sexual intercourse with them. After a brief struggle they were forced into the car and driven a short distance where they were raped. There is nothing to indicate that the defendant had anything else in mind at the time they were abducted. One of the girls was permitted to keep her purse when defendant learned she had only $3.00. The only reasonable conclusion is that the kidnaping was part of a continuous act motivated by one objective, rape; the kidnapings, although complete before the rapes were committed, were incidental to and a means of committing the rapes (cf. *People* v. *McFarland,* 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Gay,* 230 Cal.App.2d 102, 105 [40 Cal.Rptr. 778]).

The judgment is reversed insofar as it imposes sentences for the two kidnapings. In all other respects the judgment is affirmed.

Coughlin, J., and Finley, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 2, 1965. Peters, J., was of the opinion that the petition should be granted.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.