[Crim. No. 5708. Fourth Dist., Div. Two. May 9, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND GALLEGO DELGADO, Defendant and Appellant.

COUNSEL

Burleigh Brewer, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, A. Wells Petersen and Jon F. Farrell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KAUFMAN, Acting P. J.—By amended information, defendant was charged with assault with intent to rape (count 1, Pen. Code, § 220), assault by means likely to produce great bodily injury (count 2, Pen. Code, § 245, subd. (a)), oral copulation (count 3, Pen. Code, § 288a), and attempted forcible rape (count 4, Pen. Code, §§ 663, 664, 261, subd. 2). In connection with the charge of attempted rape (count 4), it was specially alleged that defendant intentionally inflicted great bodily injury on the victim (see Pen. Code, § 264). Additionally, it was charged that on or about December 28, 1970, defendant was previously convicted of assault with intent to rape and forcible rape.

On the date of trial, prior to selection of the jury and outside the presence of prospective jurors, defendant admitted the prior convictions and moved the court for a ruling that the prosecution not be permitted to show

the prior convictions for impeachment purposes should defendant take the stand. Defendant's motion was denied, and the case proceeded to jury trial. Defendant was found guilty on all counts as charged except for the special allegation of intentional infliction of great bodily injury, which the jury found not true. Defendant was sentenced to prison for the term prescribed by law on each count, the sentences to run concurrently with each other but to run consecutively to the sentence imposed with respect to the prior convictions.[1] Defendant appeals from the judgment of conviction.

## THE FACTS

The evidence of defendant's guilt is overwhelming, and he correctly does not challenge its sufficiency. Nevertheless, we deem it appropriate to set forth a brief resume of the facts. The 23-year-old victim left a restaurant in Santa Ana about 2:30 a.m. on February 19, 1972 and started walking home. She lived approximately a mile away with her parents. She suffered from epilepsy and, thus, could not drive an automobile. She had walked this route many times. There was very little traffic and she saw no one else walking on the street. As she came to a somewhat unpopulated area, a stationwagon approached facing her. It slowly passed, then stopped and backed up. Defendant was the driver. He was alone. He offered the victim a ride. She was apprehensive and continued walking down the street. The car continued backing up alongside of her. The victim looked at the license number of the vehicle and memorized it. She shortly thereafter wrote the license number (RFM 562) on the palm of her hand. She also got a good look at defendant who was at one point approximately six feet away.

The victim started running in the same direction she had been walking. Defendant stopped his vehicle and got out. He started chasing the victim, leaving his car parked in the middle of the street. The victim ran across the street near an open field where defendant caught her. Defendant grabbed her upper arm and held her face approximately eight inches from his. She cried, "Please don't" and tried to pull away. At that moment another vehicle stopped nearby. Defendant let go of the victim, ran back to his vehicle and drove away.

The victim kept running. Defendant made a U-turn and again approached the victim, stopping approximately 30 feet from her. She kept running and

---

[1]Having been treated as a mentally disordered sex offender and thereafter returned to the court, defendant was on probation with respect to the prior convictions at the time of the events giving rise to the present charges. His probation with respect to the prior convictions was, of course, revoked.

again crossed the street where defendant caught her a second time. He dragged her under a wooden fence into a field. He hit her in the face several times causing blood to flow, tore off her stockings, knocked her down and, over her protestations and struggling, attempted to have sexual intercourse with her. Unsuccessful in this attempt, defendant performed an act of oral copulation upon the victim. Thereafter he continued striking her and tore off her brassiere. Unsuccessful in his attempts to have sexual intercourse with the victim, defendant masturbated and left the victim lying on the ground. A passing motorist stopped and called the police who took the victim to a hospital.

The victim reported to the police the description of defendant's vehicle and the license number she had memorized and written down on her palm. The automobile and license plate were defendant's, and, in a statement made by him after being advised of his constitutional rights, defendant stated that he and he alone had driven the automobile on the night in question. In addition, the victim positively identified defendant as her assailant, both in court and in a pretrial photographic identification.

The defense was alibi. It consisted entirely of the testimony of defendant's wife. She testified that she was home sleeping and awoke at 1 a.m. Defendant was not then at home. The wife went back to bed, was trying to go back to sleep and may have dozed. Eventually, defendant arrived home. The wife thought he arrived prior to 2 a.m., but she could not be certain of the time. Although defendant's breath smelled of alcoholic beverages, he was not disheveled, dirty or bloody.

### PRETRIAL RULING ON ADMISSIBILITY OF THE PRIOR CONVICTIONS FOR IMPEACHMENT PURPOSES

Defendant contends that his conviction must be reversed because of the court's pretrial ruling that, should he take the stand to testify, the fact that he had suffered the prior convictions could be proved by the prosecution for impeachment purposes. Analysis of defendant's arguments reveals that, under this head, defendant's contentions are really two. First, the probative value of the prior convictions for impeachment purposes was substantially outweighed by the probability that their admission would create substantial danger of undue prejudice, and the trial court, therefore, abused its discretion in ruling the prior convictions admissible. (Evid. Code, § 352[2]; *People* v. *Beagle,* 6 Cal.3d 441, 453-454 [99 Cal.Rptr. 313, 492

---

[2]Evidence Code, section 352 provides in pertinent part: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, . . ."

P.2d 1].) Second, the court's ruling had the practical effect of preventing defendant from testifying in his own defense, thus depriving him of a fair trial (due process of law). We deal first with the abuse of discretion argument.

It is correct, of course, that in *People* v. *Beagle, supra,* 6 Cal.3d at pages 451-454 the California Supreme Court held that the discretion vested in the trial court by Evidence Code, section 352 extends to evidence of a witness' prior felony conviction permissibly admissible under Evidence Code, section 788. Quoting from *Gordon* v. *United States,* 383 F.2d 936, 940-941 [127 App.D.C. 343],[3] the *Beagle* court enumerated several of the more important factors to be considered by the trial court in exercising its discretion: (1) whether the prior conviction was based upon dishonest conduct or conduct of a violent or assaultive nature; (2) whether the prior conviction was recent or remote in time; (3) whether the prior conviction was for the same or substantially similar conduct as that presently charged; and (4) the possibility that the defendant will choose not to testify out of fear of being prejudiced as compared with the importance of the jury's having defendant's version of the facts. (6 Cal.3d at p. 453.) In enumerating these factors, however, the court was careful to state: "We do not purport to establish rigid standards to govern that which in each instance must depend upon the sound exercise of judicial discretion." (6 Cal.3d at p. 453.) Thus, it is clear that it was not the intention of the court in *Beagle* to circumscribe the exercise of the trial court's discretion with a set of immutable formulae but, rather, to set forth guidelines to assist the trial court in exercising its discretion under Evidence Code, section 352.

The duty imposed upon the trial court by Evidence Code, section 352 is, upon timely request, to weigh "probative value" against the "probability . . . of undue prejudice" and to exclude evidence only when "probative value is substantially outweighed by . . . substantial danger of undue prejudice, . . ." To understand and correctly apply the guidelines set

---

[3] In *Beagle*, the court expressly subscribed to the rationale of and quoted extensively from several decisions of the United States Court of Appeals, District of Columbia Circuit, principally *Luck* v. *United States,* 348 F.2d 763 [121 App.D.C. 151] and *Gordon* v. *United States, supra,* interpreting 14 District of Columbia Code, section 305, which at the time of those decisions was substantially similar to Evidence Code, section 788. (6 Cal.3d at pp. 452-453.) By the time of the decision in *Beagle* the District of Columbia Code provision had been amended to countermand the effect of the *Luck* and *Gordon* cases (see *Taylor* v. *United States* (D.C.App.) 280 A.2d 79, 81), but this fact was expressly recognized by the court in *Beagle*. (6 Cal.3d at p. 452, fn. 1.) We shall have occasion to refer to the *Luck* and *Gordon* cases and subsequent decisions of the same court. We do so with the recognition that, in view of the amendment of the District of Columbia Code, these decisions no longer state the rules followed in that jurisdiction.

forth in *Beagle,* it is necessary to understand what is meant by the terms "probative value" and "danger of undue prejudice." We are enlightened by the discussion of the meaning of these terms in *People* v. *Schader,* 71 Cal.2d 761, 774-775 [80 Cal.Rptr. 1, 457 P.2d 841]. ■ "Danger of undue prejudice" is the easier of the two to understand. In the context of a criminal trial, it refers to a likelihood " 'that a jury will be led astray and convict an innocent man because of his bad record, . . .' " (*People* v. *Schader, supra,* 71 Cal.2d at p. 774.) ■ "Probative value" is more complex. Its chief constituents are materiality, relevance and necessity. (*People* v. *Schader, supra.*) Thus, how much "probative value" proffered evidence has depends upon the extent to which it tends to prove an issue by logic and reasonable inference (degree of relevancy), the importance of the issue to the case (degree of materiality), and the necessity of proving the issue by means of this particular piece of evidence (degree of necessity). (*People* v. *Schader, supra,* 71 Cal.2d at p. 775.)

Thus, the guideline factors mentioned in *Beagle* are seen to be only specific examples or applications of the general considerations involved in the exercise of the court's discretion pursuant to Evidence Code section 352. That a prior conviction was based on assaultive or violent conduct as opposed to dishonest conduct militates against its admissibility because it is less relevant to the issue of credibility than a prior conviction based on dishonest conduct. (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.) Remoteness in time of the prior conviction militates against its admissibility for the same reason. (*Id.*) That the prior conviction was based on conduct the same or substantially similar to that presently charged militates against admissibility of the prior because it enhances the danger of undue prejudice. There is greater possibility that the jury will convict defendant of the offense charged because he committed the same or a similar offense in the past. (*Id.*) The fourth factor or factors mentioned in *Beagle,* the likelihood that the defendant will elect not to testify and the importance of his testimony, relate both to the "danger of undue prejudice" and to the "necessity" constituent of "probative value." (Cf. *People* v. *Beagle, supra,* 6 Cal.3d at pp. 453-454.)

■ With this background, we test the trial court's ruling for abuse of discretion. We shall hereinafter discuss at some length the propriety of the procedure employed by defense counsel and its timeliness. That aside, however, we find no abuse of discretion.

We turn first to "probative value" and a consideration of its constituents: materiality, relevancy and necessity. The materiality of the issue of credibility in a rape case is normally very great. Typically, the crime occurs in

seclusion and the only eyewitnesses are the victim and the assailant; frequently, innocence or guilt turns primarily on the assessment of the relative credibility of the victim and the accused. (See *In re Ferguson,* 5 Cal.3d 525, 534 [96 Cal.Rptr. 594, 487 P.2d 1234].) For these same reasons, the necessity for impeachment of credibility by use of a prior conviction may be very great. Frequently, there may be no other evidence bearing on credibility. Whether there is other evidence on the issue of credibility will be determined by the facts and circumstances of the particular case and the testimony of the witnesses. The relevancy of the prior convictions involved in the case at bench to the issue of credibility was not great inasmuch as the prior convictions were based primarily upon violent, assaultive conduct rather than dishonest conduct. On the other hand, there is frequently involved in cases of forcible rape or assault with intent to commit rape an element of stealth which bears some rational relationship to dishonesty, and, of course, all prior felony convictions are statutorily relevant to the issue of credibility. (Evid. Code, § 788; cf. *Brooke* v. *United States,* 385 F.2d 279, 285 [128 App.D.C. 19].) Defendant's prior convictions were not remote in time, having occurred only about a year and a half prior to the present charges. Thus, on the basis of the information before it at the time it made its ruling, the trial court had a rational basis for believing the "degree of materiality" and "degree of necessity" constitutents of probative value were great; that the "degree of relevancy" constitutent, while not great, was not nonexistent; and, thus, that the prior convictions had substantial probative value.

We turn now to the "danger of undue prejudice." Weighing on the side of undue prejudice is the fact that the present charges are substantially similar in nature to the prior convictions.[4] It also appears that, in making his motion, defense counsel indicated to the court that if the prior convictions were ruled admissible, defendant would elect not to testify. While this is a factor that may militate against admissibility of the prior convictions, it was not an overriding consideration in this case. In the first place, in discussing this factor, the court in *Beagle* sounded a note of caution: "We do not propose to encourage or countenance a form of blackmail by defendants. No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity." (6 Cal.3d at p. 453.) The timing and procedure employed by defendant's trial counsel, whether wittingly or unwittingly, approached just such a form of blackmail. Indicating that the court's ruling would be decisive on defendant's election whether or not to testify, defense counsel made no offer of proof as to

---

[4]The trial court made it clear, however, that only the fact of prior conviction would be admissible, not the details of the prior offenses.

what defendant's testimony would be, improperly insisted on an immediate pretrial ruling and, having elicited an adverse ruling, never renewed the motion. Instead, he presented defendant's alibi defense through the testimony of defendant's wife, and preserved the adverse ruling as an issue upon which to appeal. As we shall hereinafter point out, in the case at bench as in most cases, this was and is an unacceptable procedure. However, the point at this juncture is that defendant was able to present his alibi defense; thus, the jury did have the benefit of defendant's version of the case; and defendant's choosing not to testify was not as weighty a consideration as it might be in a case where the defendant had no way of imparting to the jury his version of the case other than through his own testimony. (Cf. *Brooke* v. *United States, supra,* 385 F.2d at p. 285; see also *People* v. *Beagle, supra,* 6 Cal.3d at pp. 453-454.)

The duty to balance "probative value" against "danger of undue prejudice" upon proper request is a duty imposed upon the trial court in the first instance. (Evid. Code, § 352; see also *People* v. *Beagle, supra,* 6 Cal.3d at pp. 453-454.) ▮ The trial court is statutorily directed to exclude otherwise material, relevant evidence only "if its probative value is *substantially outweighed* by the probability that its admission will . . . create *substantial* danger of undue prejudice, . . ." (Evid. Code, § 352; italics supplied.) The trial court's exercise of discretion under Evidence Code, section 352 will not be reversed on appeal absent a clear showing of abuse. (*People* v. *Tiner,* 11 Cal.App.3d 428, 435 [89 Cal.Rptr. 834] [disapproved on another point in *People* v. *Beagle, supra,* 6 Cal.3d at pp. 451-452]; *People* v. *Hayden,* 30 Cal.App.3d 446, 449 [106 Cal. Rptr. 348].) ▮ While reasonable minds might conceivably differ on the balance between "probative value" and "danger of undue prejudice" in the present case, as demonstrated in the preceding two paragraphs, it cannot be said as a matter of law that the probative value of defendant's prior convictions was substantially outweighed by the probability that their admission would create substantial danger of undue prejudice. There was, therefore, no abuse of discretion in the pretrial ruling.

There is another, independent basis for our holding that there was no abuse of discretion in the trial court's pretrial ruling. As is apparent from the discussion of undue prejudice and probative value and its constituents in *People* v. *Schader, supra,* 71 Cal.2d at pp. 774-775 and our discussion thereof, *ante,* in many, if not most, cases the trial judge will not be able to evaluate fully the possibility of undue prejudice, particularly the need for defendant's testimony, and probative value, particularly the "materiality" and "necessity" constituents thereof, until he has heard the prosecution's

evidence and unless he knows what the defendant's testimony would be if he testified. Indeed, the court in *Beagle* subscribing to the rationale of *Luck* v. *United States,* 348 F.2d 763, 767-768 [121 App.D.C. 151] (see fn. 4, *ante*) quoted from that case in part as follows: " 'The statute, in our view, leaves room for the operation of a sound judicial discretion *to play upon the circumstances as they unfold in a particular case.*' " (6 Cal.3d at p. 452; italics supplied.) This problem has been noted and dealt with in numerous decisions of the United States Court of Appeals, District of Columbia Circuit. (E.g., *Hood* v. *United States,* 365 F.2d 949, 951 [125 App.D.C. 16]; *Gordon* v. *United States, supra,* 383 F.2d at p. 941; *Evans* v. *United States,* 397 F.2d 675, 678-679 [130 App.D.C. 114]; *United States* v. *Coleman,* 420 F.2d 1313, 1316-1317 [137 App.D.C. 110] [see fn. 4, *ante*].) On the other hand, since the likelihood that the defendant may choose not to testify if his prior convictions are to be admitted for impeachment purposes is one of the factors mentioned in *Beagle* (6 Cal.3d at pp. 453-454), *Luck* (348 F.2d at p. 769) and *Gordon* (383 F.2d at pp. 940-941), it is apparent that the trial court's ruling must appropriately be made before defendant is put to the irrevocable choice of testifying or not. We trust this is what was meant by the statement in the *Beagle* opinion: "A reviewing court, however, should always give careful consideration to an exercise of a trial court's discretion in both the ruling and the *timeliness of its ruling* on the admissibility of the prior convictions." (6 Cal.3d at p. 454; italics supplied.)

Except, perhaps, by the foregoing quoted statement, the court in *Beagle* did not deal with the timing and procedure for invoking the trial court's discretion and its ruling. The above cited federal cases (see fn. 4, *ante*), however, evolved procedures, which given the *Beagle* rule, appear to us to be a reasonable, workable solution to the apparent dilemma, conducive to an informed determination by the trial court, and worthy of emulation.

The procedures evolved are these. In the first place, since the trial court is in no position to make an informed determination prior to hearing the People's evidence, the time most appropriate for the motion to exclude evidence of prior convictions for impeachment purposes is at the close of the People's case in chief or thereafter before the defendant takes the stand to testify. (See *United States* v. *Coleman, supra,* at pp. 1316-1317; *Evans* v. *United States, supra,* 397 F.2d at pp. 678-679; *Brooke* v. *United States, supra,* 385 F.2d at p. 285.)[5] Secondly, the burden of showing the danger of undue prejudice and the need for defendant's testimony in the

---

[5]Of course, the motion could be made earlier, and the trial court could reserve ruling.

ascertainment of the truth is on the defendant. (See *Hood* v. *United States, supra,* 365 F.2d at p. 951; *Gordon* v. *United States, supra,* 383 F.2d at p. 939; *Evans* v. *United States, supra,* 397 F.2d at pp. 678-679.) Third, except, perhaps, where it is obvious what the defendant's testimony would be (see *United States* v. *Coleman, supra,* 420 F.2d at pp. 1316-1317), in meeting this burden defendant should testify to his version of the facts in an *in camera* hearing or, in the alternative, make an offer of proof outside the presence of the jury summarizing what his testimony would be. (See *Gordon* v. *United States, supra,* 383 F.2d at p. 941; *Evans* v. *United States, supra,* 397 F.2d at pp. 678-680.) As was indicated in *Gordon,* the defendant cannot be compelled to give testimony in the *in camera* hearing, and should he do so, such testimony would not be admissible in evidence for any purpose except for impeachment should defendant ultimately elect to take the stand and testify. (383 F.2d at p. 941.)

In expressing approval of the procedures developed in the federal cases, we do not wish to be understood as saying that there is no case in which a pretrial motion and ruling would be appropriate. Neither do we mean to preclude the development of pretrial procedures that might serve the same purpose, to wit, giving the trial judge sufficient information upon which to make a reasoned determination. Manifestly, however, in the absence of some procedure by which the trial court can be fully informed as to the factors in the particular case bearing on "probative value" and "undue prejudice," a pretrial ruling where the question is a close one is contraindicated.

 In the case at bench, defense counsel presented his motion on the morning of the first day of trial prior to selection of the jury. The trial court at that point, of course, had no way of knowing what the People's evidence would be nor was any indication of any kind made as to the nature of the defense, what evidence the defense would adduce, or what the substance of defendant's testimony would be if he testified. The trial court correctly and repeatedly indicated that, under these circumstances, he was in a poor position to make an informed ruling on the motion and that he intended to reserve ruling. Defense counsel, however, insisted on an immediate ruling, complaining that, otherwise, he would be hampered in his *voir dire* examination of the jury. (But see *People* v. *Crowe,* 8 Cal.3d 815, 825, 827-828 [106 Cal.Rptr. 369, 506 P.2d 193].) Thus pressured, the trial court accommodated counsel by ruling. Although the trial court had originally indicated that it would be better able to make an informed determination at a later stage of the case, defendant did not renew his motion at any later stage of the proceedings and never indicated to the court in any way why defendant's testimony was especially significant. In-

stead, as previously indicated, defendant's alibi defense was presented through the testimony of defendant's wife, and defendant preserved the adverse pretrial ruling as an issue upon which to appeal.

As previously indicated, we find no abuse of discretion in the court's pretrial ruling based on the information available to him at that time. Subsequent events, particularly the fact that defendant was able to present his defense through the testimony of his wife further supported the trial court's ruling. (See *Brooke* v. *United States, supra,* 385 F.2d at p. 285.) Even if we had concluded that the trial court erred in its relative assessment of "probative value" and "danger of undue prejudice," however, such error would, in view of the trial tactics employed by defense counsel, be deemed invited. "A party is estopped from asserting error on appeal that was induced by his own conduct. He may not lead a judge into substantial error and then complain of it." (*People* v. *Katzman,* 258 Cal. App.2d 777, 792 [66 Cal.Rptr. 319] and cases there cited.)

■ Having found no abuse of discretion in the court's pretrial ruling, we doubt the necessity of our dealing definitively with defendant's contention that he was thereby effectively prevented from testifying in his own defense and, thus, deprived of due process of law and a fair trial. Even if the ruling had been erroneous, however, defendant could not convert an erroneous evidentiary ruling into a deprivation of due process of law by his own decision, knowingly and intelligently made on the advice of thoroughly competent counsel, not to testify. (Cf. *People* v. *Hicks,* 4 Cal.3d 757, 763 [94 Cal.Rptr. 393, 484 P.2d 65]; *People* v. *Tiner, supra,* 11 Cal.App.3d at p. 441 [disapproved on another point in *People* v. *Beagle, supra,* 6 Cal.3d at pp. 451-452]; also cf. *Brady* v. *United States,* 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463].) The ruling of the trial court did not deprive defendant of the right to testify in his own behalf, especially on the record in the instant case. The trial court having indicated that it would be in a better position to rule on the matter at a later stage of the trial, defendant could have renewed his motion. Failing that, or in the event of a second adverse ruling, he could nevertheless have testified and tested the trial court's ruling on appeal. Thus, the efficient cause of defendant's electing not to testify was not the trial court's ruling, but trial tactics knowingly and intelligently employed by defendant, represented by competent counsel. When such is the case, a defendant may not later complain that such trial tactics proved improvident. (Cf. *Brady* v. *United States, supra; People* v. *Hicks, supra; People* v. *Tiner, supra.*)

## Multiple Punishment

■ As previously noted, the court sentenced defendant to prison for the term prescribed by law on each of the four counts upon which he was convicted, the sentences to run concurrently. We are thus confronted with the problem of multiple punishment prohibited by Penal Code, section 654 as judicially interpreted. (E.g., *People* v. *Beamon*, 8 Cal.3d 625, 636-639 [105 Cal.Rptr. 681, 504 P.2d 905] and cases there cited and discussed.) Under the *Brown*[6]-*Neal*[7] test, we think the offenses of assault with intent to commit rape (count 1), assault by means likely to produce great bodily injury (count 2), and attempted forcible rape (count 4) constitute a course of criminal conduct indivisible because carried out with one intent and objective, to wit, to commit forcible rape. Multiple punishment for these offenses is therefore prohibited. (*People* v. *Beamon, supra.*) Although the matter is not without difficulty, it appears to us that the offense of attempted forcible rape (count 4) carries the heaviest penalty of these three offenses. (See Pen. Code, §§ 264, 664.) Accordingly, execution of the sentences imposed for the convictions on counts 1 and 2 will be stayed. (See *People* v. *Beamon, supra,* 8 Cal.3d at p. 640.)

■ The more difficult question is whether the concurrent sentence imposed with respect to the conviction of oral copulation (count 3) also offends the prohibition against multiple punishment. We have concluded that it does not. Even if we assume that the act of oral copulation was part of defendant's course of criminal conduct and thus potentially "one act" within the meaning of Penal Code section 654 as judicially interpreted,[8] we find the course of conduct divisible. The evidence does not establish as a matter of law that the oral copulation was merely incidental to the primary objective of sexual intercourse. (See *People* v. *Beamon, supra,* 8 Cal.3d at p. 639; *People* v. *Hurd,* 5 Cal.App.3d 865, 873 [85 Cal.Rptr. 718].) On the contrary, there is evidence from which it can reasonably be inferred that defendant decided to perform the act of oral copulation only after being frustrated in his initial attempts at sexual intercourse. (Cf. *People* v. *Beaumaster,* 17 Cal.App.3d 996, 1008-1009 [95 Cal.Rptr. 360]; *People* v. *Smith,* 22 Cal.App.3d 197, 200, 203 [99 Cal.Rptr. 192]; *People* v. *Hurd, supra.*)

---

[6]*People* v. *Brown,* 49 Cal.2d 577, 591 [320 P.2d 5].

[7]*Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].

[8]We have considerable doubt about the validity of this assumption. (See *People* v. *Slobodion,* 31 Cal.2d 555, 561-563 [191 P.2d 1] distinguished in *Neal* v. *State of California,* 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Armstrong,* 268 Cal.App.2d 324, 326-327 [74 Cal.Rptr. 37].)

The judgment is modified as to the sentence only as follows: "Execution of the sentences on counts 1 and 2 (assault with intent to rape [Pen. Code, § 220] and assault with means likely to produce great bodily injury [Pen. Code, § 245, subd. (a)], respectively) are, and each of them is, stayed pending the finality of this judgment and the service of sentences as to counts 3 and 4 (oral copulation [Pen. Code, § 288a] and attempted forcible rape [Pen. Code, §§ 663, 664, 261, subd. 2], respectively), such stays to become permanent when service of sentences as to counts 3 and 4 is completed." As so modified the judgment is affirmed.

Tamura, J., and Kerrigan, J., concurred.