[Crim. No. 8137. Fourth Dist., Div. One. Oct. 22, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN L. NELSON, Defendant and Appellant.

**COUNSEL**

Appellate Defenders, Inc., under appointment by the Court of Appeal, Kenyon C. Keller and F. David Stevenson, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Karl J. Phaler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

AULT, J.—Defendant John L. Nelson appeals from the judgment entered after a jury convicted him of first degree murder (Pen. Code, § 187). At the trial the People urged his conviction of murder in the first degree not only on the ground the homicide was deliberate and premeditated, but also on the ground that Nelson committed the killing in the perpetration of, or in the attempt to perpetrate, rape. The major issue on appeal arises from the trial court's denial of Nelson's motion to exclude evidence of two prior rape convictions to impeach his credibility should he testify as a witness in his defense. He contends the trial court abused its discretion in denying the motion. We agree and conclude the judgment must be reversed and the case remanded for a new trial.

FACTS

In the early morning hours of January 6, 1975 police found the body of 55-year-old Ernestine Mitchell lying near the door in her bedroom of her well-secured house.[1] Her face was covered with blood, but no sperm was found in her body. She had chop wounds on her hands, indicating she had tried to ward off blows. According to the pathologist, her death was caused by chop wounds to the skull and brain from some sharp and heavy instrument. He said it could have been a hatchet or anything resembling a hatchet, a machete, a meat cleaver, "any heavy instrument which is sharp, sharp and heavy."

Several of the victim's grandchildren had been visiting her that weekend. Nine-year-old Billy Operin and his younger sister were staying there because their mother, Kathy Mitchell, was in jail. Billy had gone to bed about 9 p.m. on January 5 but had been awakened by his grandmother's cries for help. When he tried to open her door, he heard a male voice say, "No, don't come in." Billy identified the voice as that of defendant John L. Nelson, whom he knew as a "boyfriend" of his mother, the victim's daughter.

Earlier in the evening the victim's 10-year-old granddaughter, Kim Smith, was there when defendant came to the front door and she, at her grandmother's direction, had opened it and let him in. Defendant was then wearing a blue coat, black pants, and a black and white shirt. Kim heard defendant and her grandmother discussing "Kathy being in jail." When Kim left about 11 p.m. to return to her own home, defendant was still in the grandmother's house.

When police first arrived at the scene of the crime they found, on a coffee table, an envelope upon which were written the words "Johnell's mother" with a phone number and the word "home" with another phone number. From Kim's mother they learned "Nelson" was the last name of the person known as "Johnnell" or "John L."

About 6 a.m. Officer Sing telephoned the "home" number and made telephonic contact with defendant John L. Nelson and his brother, Lawrence Nelson. When Sing asked to come over, defendant directed him to his brother's home where he was then living.

---

[1]Very security conscious, the victim had three separate locks on the front door, a chain lock and wire on the back door, and wrought iron bars on the windows of her home.

The officers arrived at 6:20 a.m. and asked defendant if they could come in, saying they wanted to talk to him about where he had been the previous night. He told them he had been home from 10 p.m. on. When the officers asked to see the clothing he had worn, defendant handed them some pants, a shirt and some shoes. He said he did not own a jacket or coat. The officers noticed a blue jacket in the bedroom but did not seize it because defendant's brother claimed it was his. Officer Williams then asked defendant to accompany him and Officer Sing to the police station for questioning. The request was made "because of more privacy." He was not placed under arrest at that time.

The officers arrived at the police station with defendant at 7 a.m. and continued to question him. He stated he had gone to Mrs. Mitchell's house on the evening of January 5 in response to a telephone message indicating she wanted to talk to him concerning some bail bond papers for Kathy Mitchell. He arrived at the house about 9:35 p.m. and remained there five or six minutes. He remembers Kim Smith leaving the house. After he left the house, he stated he went to downtown San Diego, picked up a hitchhiker and took her to Spring Valley. This time he said he returned home between 2:30 and 3 a.m.

In the course of the questioning at the police station, defendant asked "who got hurt." Since defendant had not been told of Mrs. Mitchell's death, Officer Williams then advised him of his *Miranda* rights. Defendant said he was willing to talk without an attorney. During the interview he admitted he smoked Camel cigarettes. At the officers' request, defendant removed all his clothing. They then observed scratches which appeared to be fresh—under his eyes, and on his hands and biceps. Defendant appeared nervous when asked about the scratches. At 2:45 p.m. he was placed under arrest.

Testimony by the victim's two daughters established that defendant smoked Camel cigarettes, had a habit of tearing the covers off match-books, chewed Doublemint gum, and "always wore" a blue jacket. Other witnesses testified to seeing him wear the blue jacket which had been obtained from his brother's home and made an exhibit.

Under the victim's body police found a matchbook without a cover. In the bedroom they found a butt from a Camel cigarette. Similar items were found in the living room and kitchen.

Police obtained a warrant to search defendant's residence and car. Blood stains which were consistent with the victim's blood type but inconsistent with defendant's were found on the blue jacket and on a pack of Doublemint gum found in his bedroom. Human blood was detected in defendant's automobile: in the driver's seat upholstery, on the carpet near the accelerator, and in the back seat. Small flecks of blood were found under his fingernails and in his hair. In his automobile the officers also found a carpenter's apron, some dry-wall nails and a 20 oz. Craftsman framing hammer.

Defendant was employed as a construction worker on a clean-up crew. A framing hammer can be used in dry-wall construction, but a "dry-wall hammer" is usually used. A dry-wall hammer has one round, flat surface and one very sharp, hatchet-like edge. No such hammer was ever found, and there was no evidence that defendant ever had one in his possession. At the trial there was testimony that the victim's wounds could have been caused by blows from a dry-wall hammer. The prosecutor borrowed a dry-wall hammer from a workman in the courthouse. It was identified, shown to the jury and introduced into evidence, purportedly as illustrative of the testimony of various witnesses.

Before trial defendant moved under Penal Code section 1538.5 to suppress evidence seized by the police, both with and without a warrant, contending the seizures resulted from the information obtained by the police through interrogation in violation of his *Miranda* rights. The motion was denied.

A supplement to the indictment charged defendant with four prior felony convictions, two kidnapings (Pen. Code, § 207) and two rapes (Pen. Code, § 261, subd. 3), all in San Diego County on May 20, 1964. Defendant admitted the prior felony convictions and moved the court for a ruling prohibiting the prosecution from using them for the purpose of impeachment should he testify at the trial. The court postponed argument and ruling on the motion until the close of the People's case, at which time the motion was heard and denied. Defendant declined to testify at the trial.

Midway in the presentation of the People's case, the prosecutor moved to strike defendant's two prior kidnaping convictions, stating they had been reversed on appeal.[2] The court granted the motion. In fact,

---

[2]Apparently defendant and his counsel, as well as the prosecutor, mistakenly believed the kidnaping convictions had been reversed.

defendant's two prior kidnaping convictions had not been reversed. In his 1964 trial, defendant was convicted of two kidnapings and two rapes. The kidnaping sentences were ordered to run concurrently with the sentences for the two rapes, which were ordered to run consecutively. Because the two kidnapings arose out of the same course of conduct as the rapes, this court held on appeal that the kidnaping sentences violated the proscription against multiple punishment contained in Penal Code section 654. The judgment was reversed *only* insofar as it imposed sentences for the two kidnapings; none of the four convictions were reversed (*People* v. *Nelson,* 233 Cal.App.2d 440, 445-446 [43 Cal.Rptr. 626]).

During the course of the trial, the prosecutor ascertained that defendant had been convicted of an additional felony in 1970 while in prison for his previous convictions—possession of a deadly weapon by a prisoner in violation of Penal Code section 4502. When defendant's motion to prohibit use of his prior convictions for impeachment purposes was heard at the close of the People's case, the prosecutor informed the court of the additional felony conviction and stated he was prepared to prove it. He reminded the court of the fact the two prior kidnaping convictions had been stricken and urged it to exercise its discretion under *People* v. *Beagle,* 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], by allowing use of defendant's prior rape convictions for impeachment and by denying use of his 1970 conviction of violating Penal Code section 4502 for that purpose. In making his argument the prosecutor relied heavily on *People* v. *Delgado,* 32 Cal.App.3d 242 [108 Cal.Rptr. 399] (later disapproved in *People* v. *Rist,* 16 Cal.3d 211, 222, fn. 10 [127 Cal.Rptr. 457, 545 P.2d 833]), a case in which the Court of Appeal approved a lower court's ruling permitting use of a prior rape conviction for impeachment in the event the defendant testified in a trial in which he was charged with attempted rape.

Thus defendant's motion to prohibit use of his prior felony convictions for impeachment was presented to, and considered by, the court in a context in which his prior kidnaping convictions were erroneously removed from consideration, and the determination was limited to whether the court would permit impeachment by showing defendant's two prior rape convictions in 1964, or his conviction of violating Penal Code section 4502 in 1970, or any or all of those convictions.

We repeat the court's ruling on the motion in full:

"Well, I think the courts in reviewing the Beagle case make it incumbent upon the court, upon request by defendant, to review the issue of priors as to whether or not they can be used for impeachment purposes, and in doing so I think there is no question but what credibility of witnesses is important and it is going to be in this case, particularly so far as Mr. Nelson is concerned, and so I am going to permit the use of the priors with reference to the two Penal Code Section 261.3. Both of them may be used for that purpose.

"However, on the basis of Beagle, I will exclude on Evidence Code 352 the charge referred to by the District Attorney, Penal Code Section 4502, possession of a weapon while in state prison.

"So that will be the order."

In *People* v. *Beagle, supra,* 6 Cal.3d 441, and later in *People* v. *Antick,* 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43], and *People* v. *Rist, supra,* 16 Cal.3d 211, the Supreme Court made unmistakably clear that Evidence Code section 352 invests the trial court with discretion to exclude evidence of a defendant's prior felony conviction for the purpose of impeaching his credibility as a witness and it has delineated the factors the trial court must weigh and consider in exercising its discretion. Among the pertinent factors to be considered in determining whether the probative value of evidence of a prior conviction as it affects credibility is outweighed by the risk of undue prejudice to the defendant, are the following:

(1) Whether the prior conviction involves the traits of honesty and integrity and thus significantly bears on the issue of credibility. Generally, acts which involve deceit, fraud, cheating and stealing have a direct bearing upon veracity and militate in favor of admissibility. Conversely, convictions of crimes involving violent or assaultive conduct have little relationship to credibility and usually should be excluded (*People* v. *Beagle, supra,* 6 Cal.3d 441, 453; *People* v. *Rist, supra,* 16 Cal.3d 211, 222).

(2) Whether the prior conviction is of the same, or substantially similar to, the crime with which the defendant is charged. Strong reasons exist for excluding evidence of convictions which are of the same or

similar crimes because of the tendency of jurors to believe a defendant who committed a particular crime on one occasion is likely to have committed it again (*Beagle, supra,* p. 453; *Antick, supra,* p. 97; *Rist, supra,* p. 220). Use of the same or similar prior convictions for the purpose of impeachment is particularly unwarranted where other prior convictions of dissimilar crimes exist (*Rist, supra,* p. 220).

(3) Whether the prior conviction is remote in time. Even if the prior conviction is of a crime which involves honesty and integrity, it should be excluded if it occurred long before the event in question, particularly if the defendant has since led a legally blameless life (*Beagle, supra,* p. 453; *Rist, supra,* p. 219).

(4) Whether admission of the prior conviction will have the effect of preventing the jury from hearing the defendant's version of the criminal conduct charged. Even if the other tests are all met, a judge may find in a particular case that it is more important for the jury to have the benefit of the defendant's version of it, than to have the defendant remain silent because of his fear the jury will be unduly prejudiced if informed of his prior conviction (*Beagle, supra,* p. 453; *Rist, supra,* p. 222).

Where it is claimed the trial court abused its discretion in denying a motion to exclude evidence of prior convictions for purposes of impeachment, an appellate court is required to examine the case in the light of all the factors listed above (*Rist, supra,* p. 221). If a consideration of those factors leads to the conclusion that the prejudicial effect of the prior convictions manifestly overbalances their probative value on the issue of credibility, denial of the motion constitutes an abuse of discretion (*Rist, supra,* p. 222).

The record in this case fails to enlighten us as to whether the trial court weighed and considered any of these factors as mandated by *Beagle,* and the cases which followed, in making its determination. The statement that impeachment by evidence of the two prior rape convictions would be permitted because "credibility of witnesses is important and is going to be in this case" does no more than describe the situation which exists in every case in which a defendant testifies in his defense and denies involvement in the crime charged. If that reason suffices as a basis for denying the motion, *Beagle* added nothing to the then existing law.

Examined in the light of the factors required to be considered by *Beagle,* it is manifest that the trial court abused its discretion in refusing to exclude evidence of defendant's two prior rape convictions.[3] Forcible rape is a violent and assaultive crime which bears little relationship to credibility. *People* v. *Delgado, supra,* 32 Cal.App.3d 242, upon which the prosecutor heavily relied in the trial court to support his argument against the motion to exclude, was later specifically disapproved by the Supreme Court (*People* v. *Rist, supra,* 16 Cal.3d 211, 222, fn. 10). At page 221 of its opinion in *Rist,* the court stated: "We do not agree with the *Delgado* court that the defendant's prior convictions [forcible rape and assault with intent to rape] significantly involved honesty or integrity." The fact defendant's prior rape convictions did not significantly involve the traits of honesty and integrity was a factor which weighed heavily in favor of exclusion.

Also weighing heavily against their admission is the degree of similarity between the prior convictions and the charged offense. When the prosecution relies upon the felony-murder doctrine to establish the defendant's culpability for first degree murder, evidence that he has twice been convicted of the underlying felony relied upon is not peripherally prejudicial, but completely devastating. Here, the motion to exclude evidence of the prior convictions was made after the People's evidence had been presented. A short time later, the court, at the request of the People, fully instructed the jury on felony murder, using rape and attempted rape as the basis for its application. Neither the prosecutor, in urging use of the prior rape convictions for impeachment, nor the court, in ruling such use would be permitted, gave sufficient consideration to the fact that the prior convictions in question and the People's felony-murder theory involved the identical crime. *Beagle* recognized this as an important counterbalancing factor. (P. 453.)

In ruling the prior rape convictions could be used for the purpose of impeachment, the trial court also failed to give sufficient consideration to the compelling adverse effect the ruling would have on the defendant's crucial decision of whether he should testify as a witness. If he elected to testify, the jury would be informed that he had previously suffered two convictions of rape, the very crime the prosecution was relying upon to establish his guilt of first degree murder. Despite limiting instructions,

---

[3]Of the four *Beagle* factors, only one, the question of remoteness, balances out in favor of admitting the prior rape convictions. While the convictions occurred in 1964, some 10 years before, the charged offense took place only a few months after defendant had been released from prison.

the risk under these circumstances that the evidence of the prior convictions would be misused in determining his guilt was so drastic, the practical effect of the ruling was to preclude defendant from testifying in his own defense (see *People* v. *Antick, supra,* 15 Cal.3d 79, 97). While the evidence of defendant's guilt was substantial, it was not of the overwhelming nature which would permit us to say the jury could not have benefited from his version of the case.

 The Attorney General points out that defendant made no offer of proof as to the matters about which he would testify. While an offer of proof might well aid in arriving at a decision, the lack of it does not relieve the court of its duty to evaluate the probative value of the prior convictions against their prejudicial effect (*People* v. *Rist, supra,* 16 Cal.3d 211, 222). In this case, as in *Rist,* consideration of *Beagle* factors dictates the exclusion of the prior convictions "because their prejudicial effect manifestly overbalances their probative value." (P. 222.)

We are likewise satisfied the ruling denying the motion to exclude evidence of the prior rape convictions requires reversal of the judgment. While there was substantial evidence of defendant's guilt, we do not know what his testimony would have been had he testified, as he might well have, had evidence of his prior rape convictions been excluded. Thus, as pointed out in *Rist,* we cannot ". . . determine on the record before us the degree of prejudice suffered by the defendant because of the court's error in failing to grant his motion, and the usual tests for concluding that an error requires the reversal of a judgment of conviction are not applicable." (*People* v. *Rist,* 16 Cal.3d 211, 223.) Defendant is entitled to a new trial in which his motion to exclude evidence of his prior convictions is considered in accord with the views expressed in this opinion.[4]

 It was also error for the prosecution to use, display and offer into evidence the borrowed dry-wall hammer, and for the court to receive it. Weapons or other articles which might have been used in the

---

[4]A serious question arises as to whether evidence of defendant's other convictions is admissible under *Beagle* standards. While the kidnaping convictions and the conviction of possessing a weapon in prison are dissimilar to the charged offense, neither crime significantly involves honesty or integrity. Because the kidnaping convictions were not considered in the trial court and the possession of a weapon conviction was excluded, the propriety of using these convictions, or any of them, as impeachment evidence has not been argued by either party to this appeal.

commission of a crime are inadmissible in the absence of a showing the weapon or article was in the possession of the defendant (*People* v. *Lo Cigno*, 193 Cal.App.2d 360, 379 [14 Cal.Rptr. 354]; *People* v. *McCall*, 10 Cal.App.2d 503, 505-508 [52 P.2d 500]). ▮ Here, there was no evidence the defendant ever possessed a dry-wall hammer, and the prosecution conceded the actual hammer introduced into evidence had no connection with the killing. Introduction of the hammer as illustrative of a weapon which could have been used to commit the murder was improper even though the jury was informed of the source of the hammer. Since the case must be reversed in any event, we need not decide whether the error was prejudicial. It is sufficient to emphasize it should not be repeated upon retrial.

▮ Defendant also contends he was questioned by the police in violation of *Miranda* and that certain statements he made, and certain physical evidence seized as a result, should have been suppressed. The trial court denied his motion under Penal Code section 1538.5, finding the matter was still in the investigatory stage and suspicion had not yet focused upon him at the time the statements were made. Although a different inference might be drawn from the evidence, the trial court's finding is supported by substantial evidence. The police were investigating a vicious homicide which had occurred only hours before. It was essential that they question anyone who had contact with the deceased during the previous evening. Officer Sing testified he and Williams had not yet correlated all the information obtained from witnesses when defendant was questioned. It was not until defendant asked, "Who got hurt?" that Williams suspected him of the murder.

In any event, defendant does not specify what physical evidence he claims should have been suppressed. Our own examination of the superior court file shows that the damaging physical evidence about which he apparently complains came from a search of his room at his brother's home and his automobile which was parked in the driveway. These were searched pursuant to a search warrant. The only statement in the affidavit supporting the warrant which is attributable to defendant is his acknowledgement to Officer Sing that he owned the Pontiac automobile parked in the driveway. We find nothing incriminating in the statement and are satisfied the information would have been obtained by the police in a routine and commonplace investigation of the homicide had the statement not been made.

Under these circumstances the exclusionary rule is not applicable (*People* v. *Ramsey*, 272 Cal.App.2d 302, 313 [77 Cal.Rptr. 249]; *People* v. *Chapman*, 261 Cal.App.2d 149, 167 [67 Cal.Rptr. 601]; *People* v. *Thomsen*, 239 Cal.App.2d 84, 91 [48 Cal.Rptr. 455]).

After the original briefing and argument, this court requested the parties to present additional authorities on whether the evidence is sufficient to support a conviction of first degree murder on the theory of felony murder based upon rape or an attempt to commit rape, or upon any other ground. The authorities cited by the People (*People* v. *Welch*, 8 Cal.3d 106 [104 Cal.Rptr. 217, 501 P.2d 225]; *People* v. *Miller*, 71 Cal.2d 459 [78 Cal.Rptr. 449, 455 P.2d 377]; *People* v. *Hillery*, 62 Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d 382]) indicate the evidence would warrant a conviction of murder in the perpetration of an attempt to commit rape as well as premeditated murder. Upon retrial, felony-murder instructions should be limited to felony murder based upon attempted rape.

The judgment is reversed.

Brown (Gerald), P. J., Cologne, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 5, 1977. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.