[Crim. No. 30149. Second Dist., Div. Five. Oct. 16, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL DUANE KYLLINGSTAD, Defendant and Appellant.

**COUNSEL**

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Janice L. Feinstein, Deputy State Public Defender, and Alan R. Rotheny, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KAUS, P. J.—Defendant was convicted of second degree burglary (Pen. Code, § 459) and was sentenced to state prison. On appeal he raises issues concerning the voluntariness of his confession, the trial court's ruling that he could be impeached with prior convictions for burglary and attempted burglary, inadequate assistance of counsel, and instructional error.

FACTS

Since the sufficiency of the evidence is conceded, the facts may be briefly stated.

Some time between 9 a.m. and noon on September 14, 1976, the home of Valerie and John Werlich was burglarized. Entry had apparently been made through a sliding glass door at the rear of the home. Various items were taken from both the house and the garage. Eventually defendant confessed to the crime and acknowledged that he had taken the property.

The defense was alibi. Defendant's mother testified that he was home painting the house on the morning in question. Her testimony was corroborated by James Lewis, a friend of defendant's, who stated that he had visited defendant on the morning of September 14, 1976, and had seen him painting the house. Defendant did not testify.

DISCUSSION

1. The Confession.

At a special hearing on the admissibility of defendant's confession the following evidence was introduced.

Defendant was arrested as a parole violator on the afternoon of September 14, 1976. The next day he was interviewed by Officer Sergi of the Long Beach Police Department. Officer Sergi knew nothing about the burglary of the Werlich home—the offense in the instant case—but wanted information about another burglary in which a gun had been taken. After Sergi promised defendant that he would not be prosecuted on the gun burglary, appellant confessed to that crime and described its commission. No *Miranda* waivers had been obtained.

Sergi told Los Angeles Sheriff's Deputy Olson about defendant's confession because the gun burglary had occurred in an area for which Olson was responsible. Olson ·was investigating the burglary of the Werlich residence, which was just down the street from the location of the gun burglary. He went to speak with defendant the next day.

Olson identified himself, informed defendant of his *Miranda* rights and took the appropriate waivers. He wrote defendant's answers on a prepared form from which he had read the *Miranda admonitions.* ██ ██▬█ He told defendant that he would honor Sergi's promise not to seek prosecution· on the case involving the gun burglary, but that he wanted to discuss another case with him.[1] Defendant asked Olson to write the promise regarding the gun burglary on the form and Olson complied. Both Olson and defendant then signed the form. Defendant then gave a complete confession to the Werlich burglary.

██ Defendant claims that the promise not to prosecute on the gun burglary before his confession to the Werlich crime is equivalent to the "conversation-warning-interrogation sequence" which was condemned in *People* v. *Honeycutt* (1977) 20 Cal.3d 150, 158-161 [141 Cal.Rptr. 698, 570 P.2d 1050]. In *Honeycutt,* however, the police engaged the initially hostile defendant in a friendly conversation as a deliberate ploy in order to "soften him up" and encourage him to incriminate himself. Our record contains no hint of the premeditated interrogation gambits which the *Honeycutt* court found violative of the "spirit of *Miranda.*" (*Id.,* at p. 160, fn. 5.)

If *Honeycutt* stands for the proposition that any conversation between Olson and defendant which preceded interrogation concerning the Werlich burglary vitiated any ensuing confession, the police would have been effectively stymied in interrogating defendant on the Werlich burglary. Admittedly the confession to the gun burglary had been obtained without the giving of *Miranda* warnings and would not be admissible, regardless of any promises made by Sergeant Sergi. Possibly, however, defendant was unaware of the legal flaw in the confession and

---

[1]Although the officer was impeached with preliminary hearing testimony which seemed to indicate that he tied the gun burglary deal to the second confession, Olson emphatically denied making any such statement. In reviewing the voluntariness issue, where there is conflicting testimony we must assume that all factual conflicts were resolved by the trial court in a fashion favorable to its ruling. (*People* v. *Duck Wong* (1976) 18 Cal.3d 178, 187 [133 Cal.Rptr. 511, 555 P.2d 297]; *People* v. *Carr* (1972) 8 Cal.3d 287, 296 [104 Cal.Rptr. 705, 502 P.2d 513].)

may have lacked faith that Officer Olson would honor Sergi's promise. Obviously, then, in order to escape the very charge which defendant's counsel now levies at the police—that they exploited the invalid confession to the gun burglary—some conversation between Olson and defendant defusing the potential of the early confession, was a necessary prerequisite to interrogation directed at the Werlich burglary.

■ Finally, defendant claims that since the record is silent as to the standard of proof applied by the trial court in ruling on the issue of voluntariness we must assume that the preponderance standard was applied. Our Supreme Court recently announced in *People* v. *Jimenez* (1978) 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672] that, as a judicially declared rule of criminal procedure, the standard of proof to be utilized in California in determining the voluntariness of a confession is the reasonable doubt standard. The new rule was held applicable to cases, like the instant one, which were pending on appeal at the time the *Jimenez* decision was filed. The court further stated: "However, since any error as to the standard of proof applied in determining the voluntariness of a confession relates only to a question of preliminary fact, we have concluded that the effect of any such error should be measured in accordance with the standard enunciated in *People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243]; thus when it appears after looking at the whole record of the voluntariness hearing that there is no reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error, the trial court's finding of voluntariness should be sustained on appeal." (*Id.,* at p. 609.)

Applying the *Watson* standard, we note that for the most part the People's evidence was uncontradicted. Defendant did not testify nor did he present any witnesses; consequently, there was little factual dispute as to what occurred at the time of the confession. Moreover, at the time it ruled on defendant's motion, the trial court made the following statement: "Well, the Court indicated I thought the defendant was lawfully in custody. I can find no compelling pressures, tricks or device. I would be extremely disappointed if an officer knew of another burglary in the same street; and when he was informed there had been no prosecution, if he didn't want to ask about that particular case of the second burglary. Then I would—frankly, I don't think he would be doing his job.

"When you talk about promises and statements of rights and *Miranda* and the compulsion and the coercion, everybody seems to overlook we have an exhibit here where, again, the promises with reference to a

particular case are excluded from the waiver, and this defendant signed it.

"The People have more than sustained their position. The motion is denied."

Viewing the record as a whole, with particular reference to the trial judge's statement of the basis for its ruling and the high degree of conviction possessed by the court in that result, we conclude that it is not reasonably probable that the court would have found the confession involuntary by utilizing a reasonable doubt standard.

2. The *Beagle* Ruling.

In *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], the Supreme Court formulated a four-part balancing test to be applied by the trial court in exercising its discretion under Evidence Code section 352 to determine whether the probative value of impeachment of the defendant by a prior conviction outweighs the potential prejudicial effect of allowing such impeachment. The four factors to be evaluated are: (1) Whether the prior conviction is the type of crime which bears upon traits of honesty and veracity; (2) whether the prior conviction was for an offense the same or similar to the charged offense; (3) whether the prior conviction occurred at a remote time; (4) the effect of the defendant's decision not to testify because of his fear of impeachment by way of prior convictions. (*Id.,* at p. 453.)

*Beagle* was followed by *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833]. In *Rist,* the defendant was charged with robbery. Defendant's motion under section 352 of the Evidence Code to keep the prosecutor from impeaching him with a 1973 robbery conviction and 1971 convictions for forgery of a credit card and possession of marijuana was denied. The judge ruled that the robbery but not the other convictions could be used to impeach the defendant, who then decided not to testify. (*Id.,* at p. 218.)

Conceding that the robbery conviction was both recent and relevant to defendant's honesty and veracity, the Supreme Court closely examined the other two factors, i.e., similarity of the prior to the charged offense and the effect on the defendant's decision to testify. With respect to the former, the Court spoke in no uncertain terms: "We observed in *Beagle* that prior convictions for the same crime should be admitted sparingly.

[Citation.] With dissimilar priors available reason fairly dictated that the trial court exclude defendant's robbery conviction as a showing of defendant's possible dishonesty could have been accomplished by use of the far less prejudicial forgery conviction. By selecting the robbery as the prior conviction for purposes of impeachment, the court thus acted in a manner directly contrary to the admonishment." (*Id.,* at p. 220; fn. omitted.)

■ In the present case, defense counsel stated that he anticipated that defendant would testify and that he consequently desired a ruling on whether the prosecutor could use defendant's prior convictions for impeachment purposes. The three relevant prior convictions in question had all occurred in 1975 and were a burglary, an attempted burglary, and receiving stolen property.[2] The trial judge ruled that all three were admissible for impeachment. As noted, defendant did not testify; nor did he at any time make an offer of proof.

What is particularly mystifying here is the court's decision not to limit impeachment to the receiving stolen property offense, which was not remote, was dissimilar to the offense charged, and being a larcenous crime, clearly bore upon defendant's character traits of honesty and veracity. Impeachment by that offense would have prevented defendant from presenting his testimony with "a false aura of veracity" (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453) and would clearly have been proper under *Beagle.*[3]

Consequently, it was error for the court to permit the use of the burglary and attempted burglary convictions, both of which involved precisely the same offense for which appellant was on trial. (See *People* v. *Williamson* (1977) 71 Cal.App.3d 206, 212 [139 Cal.Rptr. 222].)[4]

---

[2] All agreed that a 1969 conviction for possession of marijuana was of no significance.

[3] Although defense counsel had, of course, hoped that the trial court would not permit the use of any of the convictions, he did specifically point out that the danger of prejudice was greater as far as the burglary priors were concerned and appeared to be willing to settle for the receiving conviction. "It would be our position that if any impeachment is to be allowed that it should only be on the receiving stolen property prior and not on the burglary priors."

[4] The Attorney General attempts to distinguish *Rist* from the instant case by pointing out that in *Rist* "*only* similar priors were used although a dissimilar prior was available," while here the court allowed impeachment by both the similar and dissimilar priors. Thus he sees the "real" issue as "how harmful it would be for the jury to know a defendant is a felon if their attention is not focused solely on the fact that he committed a similar

Was the error reversible? As noted above, the erroneous admission of the prior convictions resulted in defendant's decision not to testify. In *People* v. *Rist, supra,* 16 Cal.3d 211, the Supreme Court stated that because it could not know what the defendant would have testified to, it was not possible for the court to determine the degree of prejudice and therefore prejudice was presumed. (*People* v. *Rist, supra,* 16 Cal.3d at p. 223; see also *People* v. *Nelson* (1976) 63 Cal.App.3d 11, 23 [133 Cal.Rptr. 552].) We are similarly handicapped. Although defendant presented an alibi defense through two witnesses, neither of those witnesses could account for defendant's whereabouts for the entire period of time during which the burglary might have been committed. Because of this hole in the defense, the prosecutor was able to argue to the jury with convincing force that the evidence of guilt was "really uncontradicted." Moreover, without a denial or some explanation, the confession constituted particularly damning evidence against defendant. (See *People* v. *Stroud* (1969) 273 Cal.App.2d 670, 678 [78 Cal.Rptr. 270].) In these circumstances *Rist* tells us that ". . . the usual tests for concluding that an error requires the reversal of a judgment of conviction are not applicable." (*People* v. *Rist, supra,* 16 Cal.3d at p. 223.) Similarly in *People* v. *Nelson, supra,* 63 Cal.App.3d 11, 23, after a *Rist* error which allegedly caused the defendant not to testify, the court felt bound to reverse: "While there was substantial evidence of defendant's guilt, we do not know what his testimony would have been had he testified, as he might well have, had evidence of his prior rape convictions been excluded."

While we must follow the *Rist* rule of virtually automatic reversal when defendant does not testify and makes no offer of proof, we might point out that the rule makes a mockery out of the Supreme Court's statement in *Beagle* that it did "not propose to encourage or countenance a form of blackmail by defendants" who threaten not to testify unless impeachment is restricted in accordance with their motion. The crux of the problem is a casual statement in *Rist* that while an offer of proof as to defendant's proposed testimony may be helpful, it is "not a *sine qua non* to the court's duty to evaluate probative value against prejudicial effect. . ." Why not? Two Court of Appeal decisions cited in *Rist* without disapproval (*People* v. *Jackson* (1974) 37 Cal.App.3d 496, 499 [112 Cal.Rptr. 411] and *People* v. *Stewart* (1973) 34 Cal.App.3d 244, 248-249 [109 Cal.Rptr. 826]) had

felony." To the extent that this argument attempts to turn the overkill indulged in here into a virtue, it is clever but misses the point. *Beagle* and *Rist* require the trial court to exercise a "discriminating judgment" in balancing the probative value against the prejudicial impact of evidence of prior convictions. (*People* v. *Rist, supra,* 16 Cal.3d at p. 219; see also Evid. Code § 1101, subd. (a).)

expressly stressed the importance of an offer of proof to help the trial court exercise its discretion. Why should the trial court be deprived of the ability to make an informed evaluation of the effect on the administration of justice, should the defendant elect not to testify? The result of all this is that a defendant, burdened with a truly impressive string of prior convictions, who has no intention of testifying and whose offer of proof would, under the circumstances, only amuse, can smuggle an automatic reversal into the record just by goading the trial court into an erroneous ruling on his *Beagle* motion. Unless the true purpose of the criminal trial is to test the trial court's ability to field *Beagle* problems, something is wrong.

Since, with obvious reluctance, we feel bound to reverse on the *Beagle-Rist* grounds, we do not reach defendant's claims of inadequate assistance of counsel and instructional error.

Reversed.

Stephens, J., and Ashby, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 13, 1978. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.