[Crim. No. 34282. Second Dist., Div. One. Nov. 28, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
GENE MOULTRIE, Defendant and Appellant.

COUNSEL

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and Michael D. Wellington, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HANSON, J.—

## INTRODUCTION

Defendant Gene Moultrie (hereinafter defendant and/or Moultrie) appeals from a judgment of conviction following a jury trial of five counts of robbery in violation of Penal Code section 211.[1]

## FACTS

The evidence adduced at the trial is substantially as follows:

On March 23, 1978, at about 3 p.m., while witness Carol Shaw was working on the switchboard at Brewmatic on South Main Street in Los Angeles, two black men, one of whom wore a black shirt and a heavy

---

[1]The jury found the special allegations under Penal Code sections 1203.06, subdivision (a) (1), and 12022.5 not to be true as to counts I through IV but true as to count V.

gold chain, entered and asked if there were any job openings. She responded in the negative, turned to take the next call, and when she turned once more to face the desk, she saw a gun pointed at her head. She was told, "Lady, you move and you're dead," and "Give me all your money." When she said, "We don't have any," she gave the men her rings and was told, "Get down on the floor, put your face down, put your hands up above where I can see them." As Ms. Shaw was being taken from the reception area into the main sales office, she saw Wanda Merrifield coming from the coffee room. She screamed, "...get the police, we are being ripped off," and started to run, but one of the men caught her and slammed her against the wall. She and four other employees were placed face down on the floor in the main room and then placed in an office. Altogether there were about 12 to 14 people who were put in the office and told to lie face down. When Ms. Shaw later went back to her office, she noticed that her purse had been gone through and that her money was taken. She was unable to identify defendant or any other robber.

Witness Frank Goodfellow, who was a sales manager for the business, returned from a coffee break at about 3:17 p.m. and noticed that nobody was attending the switchboard. When he tried to unjam the ringing switchboard, a black man pointed a gun to his head and said, "Drop the phone." The man was about six-two in his early twenty's with a fairly husky build and was wearing a stocking cap over his head. Mr. Goodfellow was taken into the main office area where he observed two other black men in their early 20's. He was told to lay down with a number of other people inside the office and his wallet containing about $280 was taken. Mr. Goodfellow positively identified defendant, whom he had seen holding a gun as he stood at the corner with employee Cindy Watson. He also identified a stocking as the type of stocking that the robbers were wearing over their heads.

Witness Wanda Merrifield, another employee of Brewmatic, returned from her coffee break at about 3:16 p.m. and was grabbed by defendant who was wearing a red shirt. She testified that the red shirt shown her in court looked like the one defendant was wearing.

She was with defendant for about a minute and was face to face with him. She identified defendant, who was promptly apprehended by police, as he sat in the back seat of the police car, still wearing a red shirt. When asked in court if there was anything in particular that allowed

her to identify defendant as one of the robbers, she stated, "I just couldn't forget his face. I mean he scared me. I was petrified. I never had anybody put a gun to me before. [¶] And I just remembered his face. I remember him very well." At no time did she see a stocking over defendant's face.

Witness Betty Louise Wesolek, another employee, made a positive identification of defendant as one of the three robbers.[2] She first identified defendant out in front of the building when she saw him sitting in the back seat of a police vehicle wearing a red shirt. She had her wristwatch taken and a dollar was taken from her purse. She was also in charge of the petty cash drawer from which $108 was taken.

Witness Marilyn Payne, another Brewmatic employee, testified that when she went to deliver a message to the union president, Roy Guzman, she saw people in the main office tied up so she went back to her building across the street and called the police. As she was calling the police, she looked out the window and saw three men, one of whom wore a red shirt, coming out the door but she could not identify defendant's face.

Officer Paul Holmen on March 23, 1978, at about 3:20 p.m. while in a police helicopter and in response to a call from Brewmatic where the robberies occurred observed about six persons pointing westbound on 38th Street in a rather excited manner. He saw two male blacks, one wearing a red shirt, running westbound on 38th Street. The red shirted male was taken into custody about five and a half blocks from where Officer Holmen first spotted the suspects running.

---

[2]The following is extracted from the reporter's transcript of the trial:

"Q. Could you hear what the man said to Miss Shaw?

"A. Well, I don't recall the exact words. But, it was something like, 'Trying to get your head blown off by screaming?' Or something like that.

"Q. What did that man—what was he wearing?

"A. He was wearing a red shirt and had a gun.

"Q. What kind of gun did he have?

"A. It was silver chrome and had a longer barrel.

"Q. Could you tell whether that was an automatic, or whether that was a pistol, a revolver?

"A. No.

"Q. Are you able to identify the man that had the red shirt on?

"A. Yes.

"Q. Did you identify him at the preliminary hearing?

"A. Yes.

"Q. Did you identify him when you walked out of 3828 South Main?

"A. Yes.

"Q. Would you identify him here today, please.

"A. He's that gentleman right there."

Officer Robert Hunter while working a traffic unit on March 23, 1978, with Officer Coffey responded to a robbery call at about 3:20 to 3:30 p.m. The officers, who were northbound on Figueroa at Exposition, received information from the police helicopter that one of the suspects was westbound on 38th Street approaching Hill Street. Defendant, who was wearing a red shirt, was apprehended by the officers on 38th Street, returned to the location where the robbery occurred and handed over to a patrol unit. Officer Hunter testified that he was present when defendant was searched and an application for employment and a stocking were removed from defendant's person. Defendant had no guns or jewelry on him and Officer Hunter, who searched the area where defendant had run, found nothing.

Witness Frederick Banuelos, a fingerprint expert for the Los Angeles Police Department, retrieved three latent prints from the scene of the robbery, one of which was obtained from a metal file cabinet located on the second floor of Brewmatic. Witness Donald Keir, another fingerprint expert for the Los Angeles Police Department, testified that he compared that latent print lifted with a print exemplar of defendant and concluded that both were made by the same person.

Officer Hollis Blakesley testified that after defendant was advised of his constitutional rights and waived them, he was interviewed at the jail on March 24, 1978, at about 10 a.m. and that defendant denied any involvement in the robbery at Brewmatic and denied ever having been in the building. Defendant stated that when he was arrested he was waiting for a bus. At the time of the interview defendant was wearing a red T-shirt.

Upon the completion of the prosecution evidence, the defense rested without calling any witnesses. Defendant elected not to testify in his own defense.

## ISSUES

On appeal defendant contends (1) that the trial court erroneously denied his *Beagle* (*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]) motion to exclude defendant's prior attempted robbery conviction for impeachment purposes; and (2) that there is a lack of substantial evidence to support the jury's finding that he personally used a firearm within the meaning of section 12022.5 of the Penal Code (hereinafter section 12022.5).

DISCUSSION

I

■ The main thrust of defendant's argument on appeal is that the trial court committed reversible error in failing to properly interpret and apply the holdings in the Supreme Court cases of *People* v. *Beagle, supra,* 6 Cal.3d 441, and *People* v. *Rollo* (1977) 20 Cal.3d 109 [141 Cal.Rptr. 177, 569 P.2d 771]. During oral argument and by letter defendant further contends that the recent case of *People* v. *Fries* (1979) 24 Cal.3d 222 [155 Cal.Rptr. 194, 594 P.2d 19], also supports his contention that the trial court erred in respect to its handling of the *Beagle* motion. In essence defendant argues that a prior attempted robbery conviction can never be used for impeachment purposes at a trial where defendant is being prosecuted for robbery and that it was the court's ruling that persuaded him not to testify.

In the case at bench at the close of the prosecution's case, defense counsel made a *Beagle* motion and argued that *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d.833] precluded the use of defendant's prior conviction for impeachment should he decide to take the stand in his own defense. Following a substantial discussion of the principles in *Beagle, Rollo* and *Rist,* the trial court stated, "And I do feel that it would be more equitable on each side under the law as it now exists to have the impeachment on the basis of: 'Have you ever been convicted of a felony involving theft?'" Whereupon following a 10-minute recess, defense counsel said, "At this point, Your Honor, it would be the defense desire to call no witnesses. The defendant does not desire to testify."

In *Beagle* the defendant was convicted of arson and attempted arson and a prior conviction of issuing a check without sufficient funds was charged and admitted. The Supreme Court in rejecting all of defendant's contentions and in affirming the judgment of conviction expressly addressed itself to the relationship between Evidence Code section 788, authorizing impeachment by evidence of a felony conviction, and Evidence Code section 352, giving the trial judge discretion to exclude evidence under certain conditions. The court disapproved a line of Court of Appeal decisions adhering to the view that the trial judge had no discretion to exclude evidence of a prior felony conviction where the

lawfulness of the conviction was established or uncontested. The court concluded that when read together, the above two Evidence Code sections give the trial judge discretion to exclude evidence of prior felony convictions offered for impeachment purposes where the probative value of the evidence with regard to credibility is outweighed by the risk of undue prejudice.

For the guidance of the state trial courts in exercising their discretion in this respect the Supreme Court discussed the key factors to be considered which were quoted from *Gordon* v. *United States* (D.C.Cir. 1967) 383 F.2d 936, but emphasized that these were mere discretionary guidelines, stating: "We do not purport to establish rigid standards to govern that which in each instance must depend upon the sound exercise of judicial discretion." *People* v. *Beagle, supra,* 6 Cal.3d 441, 453.)

Under *Gordon* one of the factors to be considered is the remoteness of the prior conviction. Here, this factor clearly does not favor exclusion since the prior conviction was only two years old and defense counsel did not argue this point. Another factor to be considered is whether the prior conviction logically bears on the defendant's honesty and veracity. Here, there was no disagreement on this point below. The prosecutor argued, "It's certainly the type of prior that goes to truth or veracity." The trial court logically agreed, and again defense counsel made no counter-argument. Defendant's argument on this point is not supported by case law since the Supreme Court has twice ruled in *Rist* and *Rollo* that robbery is relevant on this issue. If robbery itself is relevant, attempted robbery is necessarily also relevant since a criminal is not made more honest by the mere fact that he is interrupted before he completes the robbery.

Addressing the third factor, the similarity of the prior to the crime currently on trial, the *Beagle* court at page 453 quoted from *Gordon* v. *United States, supra,* 383 F.2d 936, as follows: "'Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe "if he did it before he probably did so this time." As a general guide, those convictions which are for the same crime should be admitted sparingly....'"

We further note that in *Rist* the state Supreme Court reversed in part because the trial court allowed impeachment on a similar prior

when there were other nonsimilar priors available to choose from. In the instant case there was only one prior and the trial court had no others from which to choose. Moreover, it did not allow the prosecutor to ask a question which would have informed the jury that the defendant had been convicted of a similar offense in the past (attempted robbery) but, as previously mentioned, only allowed inquiry into whether the defendant had been convicted of a felony involving a theft, thus avoiding the "difficult problem" quoted from *Gordon* by *Beagle*. Here, the jury would never have been told that defendant had been convicted of attempted robbery.

We turn to the last factor to be considered by the trial court as discussed in *Beagle*. The *Beagle* court at page 453 quoted from the *Gordon* case as follows: "'[O]ne important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. Even though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment.'"

However, the *Beagle* court went on to say: "This last mentioned factor, we feel, calls for a word of caution. We do not propose to encourage or countenance a form of blackmail by defendants. No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. The general rule is that felony convictions bearing on veracity are admissible. We have previously said: 'The defendant must weigh the danger of impeachment by the introduction of prior convictions for every witness he calls for the defense. "The fact that the witness may also be the defendant makes the choice more difficult but a denial of due process does not emerge from the circumstances." (*Adamson* v. *California,* 332 U.S. 46, 57-58 . . . .)' *People* v. *Modesto* (1965) 62 Cal.2d 436, 454 . . .; accord, *People* v. *Roberts* (1966) 65 Cal.2d 514, 522 . . . .) In *Griffin* v. *California* (1965) 380 U.S. 609, 615 . . ., the foregoing analysis set forth in *Modesto* was not rejected and 'the court appears to tacitly assume [*sic*] that the deterrent effect upon defendant's testifying where evidence of prior convictions may be adduced violates neither due process nor the right of defendant to call witnesses on his own behalf under the Sixth Amendment.' *(People* v. *House, supra,* 12 Cal.App.3d 756, 764.) We conclude that although there is no constitutional bar to the use of valid prior felony

convictions for impeachment purposes, there are limits on the use of such evidence contained within the statutory provisions we have discussed. A reviewing court, however, should always give careful consideration to an exercise of a trial court's discretion in both the ruling and the timeliness of its ruling on the admissibility of the prior convictions." (*People* v. *Beagle, supra,* 6 Cal.3d 441, 453-454.)

In the case at bench it is clear that the trial court in exercising its discretion carefully weighed this latter factor and struck a fair and reasonable balance between the effect of a defendant not testifying out of fear of being prejudiced because of impeachment by a prior conviction and clothing him with "a false aura of veracity." The trial court in the event the defendant took the stand restricted the prosecution's impeachment to "Have you ever been convicted of a felony involving theft?" No mention of the prior conviction of "attempted robbery" was permitted.

Moreover, the record indicates that defendant's testimony at trial would have been of little value for defense purposes. Three unimpeached victim witnesses positively identified defendant as one of the armed robbers. Defendant, first spotted by a police helicopter while running from the scene of the crime, was arrested by police on the ground. Furthermore, his fingerprints were found on a metal file cabinet which the robbers had moved during the robbery. The only defense defendant had was what he told the police officers after his arrest, i.e., that he had never been in the Brewmatic building and had been waiting for a bus when arrested. If defendant had taken the stand, he would have had to stick to the story he told the police or back away from it. Neither option offered him any genuine chance of success. His argument on appeal that he might have been able to explain the presence of his fingerprints by reference to the employment application which had been found in his pocket would not carry much weight since he had already told the police he had never been in the building and the application which was found on him was not from the Brewmatic company.

Thus, it is extremely doubtful that the trial court's ruling on the *Beagle* motion kept defendant off the stand. No such claim was made by trial counsel. There are other, and possibly more persuasive, reasons why defendant decided not to testify, i.e., the extremely strong prosecution case and defendant's impeachment by reason of the statements he made to the police after his apprehension.

Nor do we perceive any *Rollo* error. In *Rollo,* the trial court had limited the prosecutor to asking whether the defendant had been convicted of a felony. The Supreme Court held this was improper because the failure to name that felony precluded the trier of fact from properly judging whether that felony had any logical bearing on the defendant's honesty, and if so, to what extent, and the court was also concerned that failing to name the felony invited the jury to speculate that the crime was much worse than it in fact had been. (*People* v. *Rollo, supra,* 20 Cal.3d 109, 118-119.) Here, the trial court was well aware of the *Rollo* opinion and discussed it during its comments on the *Beagle* motion and the solution it reached carefully avoided the concerns voiced in the *Rollo* decision.

Counsel for both the defendant and the People on appeal at oral argument and by subsequent letter briefs argue that the recent case of *People* v. *Fries, supra,* 24 Cal.3d 222, supports their contentions.

In *Fries* (Richardson and Clark, JJ., dis.) at the close of the prosecution's case for robbery, defendant moved to exclude evidence of a prior robbery conviction, which was offered to impeach his credibility. The trial court denied the motion and defendant did not testify. Defendant was convicted by a jury of robbery in the second degree. The Supreme Court reversed, holding that because the prior conviction was identical to the offense for which defendant was on trial, the trial court erred in admitting the prior robbery conviction. Further, since there was no clue as to what defendant's testimony would have been had he testified, and in the absence of any basis for concluding that such testimony would not have affected the result, the court held it was reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error.

The case at bench is clearly distinguishable from the *Fries* case in that unlike *Fries* defendant Moultrie's prior conviction of attempted robbery was not admitted for impeachment purposes. The trial court limited the prosecuting attorney's inquiry to whether defendant had been convicted of a felony involving theft relevant to his integrity. In our view the trial court's handling was a reasonable and available alternative to the approach rejected in *Rollo* and not at odds with *Fries*.

In sum the manner of handling by the trial court in the instant case properly allows impeachment by reference only to the relevant theft-

related aspect of a robbery while not inviting the jury to speculate that the prior was more serious than it was or portraying defendant as a career robber while denying defendant a false aura of veracity. Accordingly, in our view the court below in weighing the probative value on credibility against the risk of undue prejudice skillfully circumvented the evils described in *Beagle, Rollo,* and *Fries.*

Finally, arguendo, even if there had been some error in the trial court's ruling, the evidence of guilt was so overwhelming as previously outlined that the ruling on impeachment could not possibly have affected the verdict. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see also *People* v. *Rollo, supra,* 20 Cal.3d 109, 120-121.)

## II

■ Defendant's last contention that there is a lack of substantial evidence to support the jury's finding that defendant personally used a firearm within the meaning of section 12022.5 is totally without merit.

The evidence is overwhelming that defendant personally used a hand gun during the commission of the robberies. It is clear that the testimony of only one witness identifying defendant Moultrie as one of the robbers and placing a gun in his hand would constitute substantial evidence. Here, witness Merrifield testified that "there is no question about it" that defendant was the person who came to her with a gun in his hand. Witness Wesolek testified she saw and heard defendant (wearing a red shirt) with a gun in his hand push witness Shaw against the wall and say something like "Trying to get your head blown off by screaming?" Witness Goodfellow also testified he saw defendant with a gun in his hand during the robberies.

## DISPOSITION

The judgment of conviction is affirmed.

Lillie, Acting P. J., and Kaufmann, J.,* concurred.

A petition for a rehearing was denied December 14, 1979, and appellant's petition for a hearing by the Supreme Court was denied January 24, 1980. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.