[Crim. No. 20095. First Dist., Div. Four. July 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYNE COYNE LASSELL, Defendant and Appellant.

722

COUNSEL

Daniel F. McHugh, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CHRISTIAN, J.**—Wayne Coyne Lassell appeals from a judgment of imprisonment which was rendered after a jury found him guilty of grand theft (Pen. Code, § 487, subd. 1).

John A. Howe, proprietor of a jewelry and antique shop, was contacted by a visitor (identified at trial as appellant) who said he was Alan Bienenfeld, a jeweler from Carmel. Appellant told Howe that he had been in the shop before; at that point Howe recognized him as being the person from whom he had purchased a small diamond ring earlier the same year. Howe's son Jack also recognized appellant from the previous encounter.

Howe agreed to purchase a ring from appellant for $1,500, contingent upon an appraisal to establish that the ring contained a diamond worth that amount. Jack Howe accompanied appellant to another jewelry store and left the ring for appraisal. Appellant handed Jack the receipt for the ring and the two went to a bank where Jack cashed a check for $1,500, and gave the money to appellant who then returned $50 for the appraisal according to a prior agreement. Appellant left with the remaining $1,450.

The following day, John Howe, Sr., called the number on Alan Bienenfeld's business card which had been left by appellant. The real Alan Bienenfeld answered and informed Howe that he was not the person who had sold Howe the ring the previous day. Howe's wife consulted the store records and found that the cancelled check used earlier in the year to purchase the ring from appellant was made out to Wayne Lassell.

Sally Adams, a gemologist, examined the ring (which contained 3 stones, each weighing approximately .75 carats) and found that the stones were cubic zirconiums rather than diamonds. Adams testified that cubic zirconiums have a retail value of approximately $40 a carat; diamonds usually retail for no less than $1,000 a carat.

Appellant contends that the trial court committed reversible error in failing properly to interpret and apply the holding of the Supreme Court in *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]: it was an abuse of discretion to deny a motion to preclude the

use of prior convictions for burglary and receiving stolen property for impeachment purposes in a prosecution for grand theft.

Evidence Code section 788 governs the admission of prior felony convictions for impeachment purposes, providing that for "attacking the credibility of a witness, it may be shown...that he has been convicted of a felony" (Evid. Code, § 788). Evidence Code section 352 grants a trial judge discretionary power to exclude evidence if the probative value is substantially outweighed by its prejudicial effect. The California Supreme Court defined the relationship between section 788 and section 352 in *Beagle, supra.* ▌ The court held that a trial court may exclude evidence of prior felony convictions offered to impeach a witness upon balancing the following four factors:

(1) Whether the prior convictions reflect adversely on the defendant's honesty or veracity; (2) Whether the prior felony conviction is near or remote in time; (3) Whether the prior felony conviction is for substantially similar conduct for which the accused is on trial; (4) The effect if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. (*People* v. *Beagle, supra*, 6 Cal.3d at p. 453.)

The court must weigh the first two factors "against the probability that admission of such evidence 'will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (§ 352.)" (*People* v. *Fries* (1979) 24 Cal.3d 222, 227 [155 Cal.Rptr. 194, 594 P.2d 19].) The third and fourth factors provide guidance in assessing the weight of these countervailing considerations.

The first factor to be considered in reviewing the challenged ruling is whether the prior convictions logically bear on the defendant's honesty or veracity. In *People* v. *Rollo* (1977) 20 Cal.3d 109, 118 [141 Cal. Rptr. 177, 569 P.2d 771], the court elaborated upon this factor: "different felonies have different degrees of probative value on the issue of credibility. Some, such as perjury, are intimately connected with that issue; others, such as robbery and burglary, are somewhat less relevant; ..." Here the prior convictions were for burglary and receiving stolen property which, as appellant and respondent agree, are probative on the issue of credibility.

The second factor to be considered is the nearness or remoteness of the prior convictions to the current offense. Appellant's prior convictions occurred in March of 1975, three years before the current alleged offense, and four years before the trial. The greater the remoteness of a prior conviction the less probative value it possesses; but four years does not entirely dissipate probative value. (*People* v. *James* (1978) 88 Cal.App.3d 150 [151 Cal.Rptr. 354] [five-year-old prior used]; *People* v. *Boothe* (1977) 65 Cal.App.3d 685 [135 Cal.Rptr. 570] [six-year-old prior used].) Here, the fact that the prior convictions were four years old does not point toward exclusion of the evidence.

Third, the trial court must assess the danger of undue prejudice when the prior offense is similar to the charged offense. ■■■ Appellant contends that convictions of burglary (Pen. Code, § 459) and receiving stolen property (Pen. Code, § 496) are essentially similar to grand theft (Pen. Code, § 487, subd. 1), and that the trial court should have ruled the priors inadmissible because such evidence would unduly prejudice the jury. Evaluation of this contention is assisted by tracing the history of the similarity test.

In *People* v. *Beagle, supra*, 6 Cal.3d 441, 453, the court stated: "We do not purport to establish rigid standards to govern that which in each instance must depend on the sound exercise of judicial discretion." Subsequent decisions nevertheless imposed some rigidity on the balancing process through development of a requirement that trial courts preclude use of prior convictions which are identical with the offense charged. In *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833], the court held that a trial court's admission of a prior robbery conviction to impeach a defendant accused of robbery was an abuse of discretion. The court reasoned: "A jury which is made aware of a similar prior conviction will inevitably feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged." (*Rist*, at p. 219.) The court reiterated its observation in *Beagle* that similar prior convictions should be admitted sparingly. (*Rist*, at p. 220.) It should be noted that in *Rist* the trial court did not fail to exercise discriminating judgment solely because the charged offense and prior conviction were identical: other prior convictions were available which bore more directly on credibility and were dissimilar to the charged offense. Thus the trial court's ruling resulted in prejudice toward appellant which could have been avoided. Cases disapproved by *Rist* involved the admission of prior convictions essentially identical to the charged offense: *People* v. *Delgado* (1973) 32 Cal.App.3d 242 [108

Cal.Rptr. 399] (motion to exclude 18-month-old prior convictions of forcible rape and assault with intent to rape denied, and charged offense was assault with intent to rape and attempted forcible rape); *People* v. *Stewart* (1973) 34 Cal.App.3d 244 [109 Cal.Rptr. 826], cert. den. 415 U.S. 159 [39 L.Ed.2d 574, 94 S.Ct. 1489] (held no abuse of discretion when the trial court refused to exclude 1957, 1963 and 1967 burglary convictions in the case of a defendant charged with a 1972 burglary); *People* v. *Jackson* (1974) 37 Cal.App.3d 496 [112 Cal.Rptr. 411] (held no abuse when trial court refused to exclude a recent robbery conviction although other dissimilar recent convictions were available, in a case where the defendant was charged with robbery); *People* v. *Wingo* (1973) 34 Cal.App.3d 974 [110 Cal.Rptr. 448] (held no abuse of discretion when trial court refused to exclude 1959 and 1966 burglary convictions although a dissimilar conviction was available in a case where the defendant was charged with attempted burglary); *People* v. *Hayden* (1973) 30 Cal.App.3d 446 [106 Cal.Rptr. 348] (held no abuse of discretion when trial court refused to exclude an armed robbery conviction when defendant was charged with armed robbery in three counts). (*Rist, supra*, at p. 221.) These decisions were disapproved because they "accorded little weight to the crucial counterbalancing factors noted in *Beagle*, particularly the near identity of the crimes and the effect of the defendant's failure to testify in circumstances where his testimony might be significant." (*Rist, supra*, at p. 221.) The court was concerned with the weighing process required of trial courts in applying the *Beagle* standard, not simply the identity of the crimes.

In *People* v. *Fries, supra*, 24 Cal.3d 222, the court held that failure to preclude introduction of a prior robbery conviction in a trial for robbery was an abuse of discretion. The court explained *Rist* as "emphasizing the extreme caution that trial courts must exercise in deciding to admit a similar prior conviction since the risk of undue prejudice is so great." (*Fries, supra*, at p. 230.) Both *Rist* and *Fries* found an abuse of discretion in situations in which the prior convictions were identical to the charged offenses, but as in *Rist*, the analysis in *Fries* focused on the balancing process undertaken by the lower court: "[T]he prior conviction was recent, and under the rules of evidence, admission would be favored. However, a conviction of robbery is only partly relevant to credibility, . . . [¶] Balanced against these two factors was the fact that the robbery conviction was identical to the crime for which appellant was being tried and thus strongly indicated exclusion. . . . [¶] . . . . [¶] The second counterbalancing factor favoring exclusion of the prior con-

viction was that appellant's testimony might have contributed to the jury's understanding of the case, since no other witness testified to a defense version of the facts." (*Fries, supra*, at pp. 229-231.)

In *People* v. *Spearman* (1979) 25 Cal.3d 107 [157 Cal.Rptr. 883, 599 P.2d 74], the court held that it was an abuse of discretion for the trial court to deny a motion to exclude a prior conviction for possession of heroin for sale in a prosecution for possession of heroin for sale and transporting heroin. The *Spearman* decision went a step further than *Fries*. It held the trial court erred in ruling the prior conviction admissible for impeachment because: "That prior conviction was identical to one of the offenses...It compels the conclusion that the trial court's ruling below was erroneous." (*Spearman, supra*, at p. 116.) ■ Thus, the rule is that if the charged offense and prior conviction are identical, the prejudicial effect cannot be overcome by factors favoring admission, and a ruling that such a prior conviction is admissible is always an abuse of discretion.

Trial courts are still to exercise discretion in situations in which the prior and the charged offenses are less than identical. Several decisions avoid formulaic exclusion and follow the call in *Rist* and *Fries* for balancing. In *People* v. *Banks* (1976) 62 Cal.App.3d 38, 45 [132 Cal.Rptr. 751], the trial court denied appellant's motion to exclude a prior receiving stolen property conviction in a prosecution for burglary with intent to commit theft. The Court of Appeal recognized the similarity factor as pointing in the direction of exclusion but held that in light of countervailing factors the decision whether to permit impeachment rested within the discretionary power of the trial court: "In the case before us, this factor of similarity between the felony conviction (receiving stolen property), sought to be used to impeach defendant Banks as a witness, and the crime charged (burglary with intent to commit theft), together with the lack of remoteness in time between the two offenses, would point toward exclusion of the proffered evidence as the proper exercise of judicial discretion, in light of *Beagle, Antick* and *Rist*.

"Here, however, we have countervailing factors. One factor is that the felony conviction of receiving stolen property has substantial relevancy and probative value to impeach a witness because the offense pertains to the impeachment trait of *dishonesty*. A second countervailing factor is that we are *not* dealing with a *jury* trial but with a *court* trial." (62 Cal.App.3d at p. 45; italics in original.)

In *People* v. *Kyllingstad* (1978) 85 Cal.App.3d 562 [149 Cal.Rptr. 637], the charged offense was burglary and the trial court ruled that the defendant could be impeached by two prior burglary convictions and a conviction for receiving stolen property. The appellate court held that it was error to admit the burglary convictions, but admission of the stolen property offense, "which was not remote, was dissimilar to the offense charged, and being a larcenous crime...would clearly have been proper under *Beagle*." (*Kyllingstad, supra*, at p. 569.) In *People* v. *Coleman* (1979) 89 Cal.App.3d 312 [152 Cal.Rptr. 407], defendant was convicted of burglary with intent to commit rape. The trial court had permitted defendant to be impeached by evidence of a prior conviction of burglary with intent to commit theft. The court weighed the *Beagle* factors: "a burglary in which the entry is made with the intent to commit theft does have substantial probative value for impeachment purposes since the theft intent connotes the character trait of dishonesty. [¶]...Because of the nearness of time of the prior burglary to the date of the offenses charged against defendant, the probative value of the prior burglary conviction cannot be discounted because of the element of remoteness from the date of the charged offenses.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"In the case before us, defendant asserts that, since one offense charged against him was a burglary, the use of the prior burglary conviction to impeach him as a witness ought to have been excluded in light of the great danger of prejudice as expressed in the *Rist* case. We do not believe, however, that such a danger exists in the case before us because the burglary alleged in the information is that of a burglary with an intent to commit rape, while the prior felony burglary was one in which the intent involved was that of committing theft. Although the two offenses have the common name of 'burglary,' the differences in the *intent* making up the two offenses lead to the conclusion that the two are *not* substantially similar offenses for the purpose of the issue of the rules for exclusion of a prior felony conviction proffered to impeach a defendant as a witness. There is not a substantial likelihood that a jury would misuse the felony conviction evidence and conclude that because defendant committed a burglary with intent to commit theft at some point in the past, he therefore committed the burglary charged of an entry into the victim's home with the intent to commit rape." (*Coleman, supra*, pp. 319-320.)

In *People* v. *Moultrie* (1979) 99 Cal.App.3d 77 [160 Cal.Rptr. 51], the trial court ruled that a prior attempted robbery conviction was admissible for impeachment purposes in a prosecution for robbery, but limited the prosecution to impeachment on the basis of whether the defendant had ever been convicted of a felony involving theft. (*Moultrie,* p. 83.) On appeal, the court weighed each of the relevant *Beagle* factors and concluded: "In the case at bench it is clear that the trial court in exercising its discretion carefully weighed this latter factor and struck a fair and reasonable balance between the effect of a defendant not testifying out of fear of being prejudiced because of impeachment by a prior conviction and clothing him with 'a false aura of veracity.' The trial court in the event the defendant took the stand restricted the prosecution's impeachment to 'Have you ever been convicted of a felony involving theft?' No mention of the prior conviction of 'attempted robbery' was permitted.

"Moreover, the record indicates that defendant's testimony at trial would have been of little value for defense purposes.' (*Moultrie, supra,* at p. 86.)

In *People* v. *Anjell* (1979) 100 Cal.App.3d 189 [160 Cal.Rptr 669], defendant was charged with robbery and the trial court denied his motion to exclude two admitted prior convictions for grand larceny and receiving stolen property. Defendant elected not to testify. On the factor of similarity the court said: "Grand larceny and receiving stolen property are somewhat similar in nature to the crime of robbery with which appellant was charged. Because all three offenses are larcenous, there was a degree of risk that the jury might be persuaded to find appellant guilty of the robberies on the basis of his past larcenous conduct. (See *People* v. *Rist, supra,* 16 Cal.3d 211 at p. 219; *People* v. *Banks, supra,* 62 Cal.App.3d 38 at p. 44.) However, the crime of robbery is assaultive as well as larcenous (*People* v. *Rist, supra,* at p. 220), and preponderantly so in the perception of lay people sitting as jurors. The risk mentioned was accordingly diminished because neither of appellant's priors indicated assaultive conduct in the past. No abuse of discretion has been shown in the trial court's treatment of the third *Beagle* factor." (*Anjell, supra,* p. 197.) After completing an analysis of the other *Beagle* factors, the court concluded that the trial court did not abuse its discretion by ruling the prior convictions admissible.

Of course the balancing of *Beagle* factors may compel exclusion. In *People* v. *Buss* (1980) 102 Cal.App.3d 781 [162 Cal.Rptr. 515], the

court held that denial of a motion to exclude evidence of a prior conviction for auto theft in a prosecution for unlawful driving or taking of a vehicle was an abuse of discretion. The court reasoned that although the prior bore on honesty or veracity and was not remote, its probative value was outweighed by the factor of prejudicial similarity, compounded by defendant's failure to testify. (*Buss, supra,* pp. 783-784.)

Appellant cites *People v. Burdine* (1979) 99 Cal.App.3d 442 [160 Cal.Rptr. 375], where the Court of Appeal held that admission in evidence of prior convictions of robbery and auto theft in a trial for burglary was an abuse of discretion because the prior convictions were closely similar to the charged offense. (*Burdine,* at p. 449.) The court did not balance factors favoring admission against countervailing factors. *Burdine* simply precludes use of a prior conviction if it shares similar elements with the offense charged. This holding is not supported by any reasoning or authority, and is a limitation of the trial court's discretionary power going beyond the holdings of *Rist, Fries,* and *Spearman.* We conclude that the *Burdine* holding is unsound and should not be followed. To accept appellant's argument would be to extend unreasonably the similarity doctrine. A requirement that in every trial for a crime involving larceny a court must exclude all prior convictions of crimes containing any element of larceny would vitiate the provisions of Evidence Code section 788, contrary to legislative intent.

The final *Beagle* criterion is "'...what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions....'" (*People v. Beagle, supra,* 6 Cal.3d 441, 453, quoting *Gordon v. United States* (D.C.Cir. 1967) 383 F.2d 936, 940 [127 App.D.C. 343], cert. den. 390 U.S. 1029 [20 L.Ed. 2d 287, 88 S.Ct. 1421].) *Beagle* emphasized: "No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity." (*Ibid.*)

The trial court had no way of knowing what appellant's testimony would have been when it ruled on the *Beagle* motion. Again, on review, this court cannot know what appellant's testimony would have been. The *Rist* court observed: "Perhaps the most difficult to evaluate of the *Beagle* factors is the adverse effect on the administration of justice should a defendant elect not to testify for fear of impeachment." (*People v. Rist, supra,* 16 Cal.3d 211, 222.) The court pointed the way out of this difficulty: "[The] evaluation must necessarily depend in large part on the totality of other evidence bearing on the question of the de-

fendant's guilt in the unique circumstances of the particular case."
(*Ibid.*) At trial, witnesses testified to appellant's mistaken identity and
alibi defenses. This is in contrast to the facts of *People* v. *Fries, supra*,
24 Cal.3d 222, 231, in which no witnesses testified to a defense version
of the facts. ▮ Here, if appellant had testified it may be inferred
that he would probably have corroborated other testimony already giv-
en in his defense. His testimony was not essential to the presentation of
his defense. It does not appear from the record that the trial court acted
capriciously or arbitrarily in weighing the *Beagle* factors and deciding
to permit impeachment.

▮ Appellant contends that the evidence presented at trial is insuf-
ficient to support the jury's verdict. ▮ In reviewing a criminal
conviction, an appellate court must determine whether a reasonable
trier of fact could have found the prosecution sustained its burden of
proving the defendant guilty beyond a reasonable doubt. (*People* v.
*Johnson* (1980) 26 Cal.3d 557, 575-577 [162 Cal.Rptr. 431, 606 P.2d
738]; *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475
P.2d 649].)

"In determining whether a reasonable trier of fact could have found
defendant guilty beyond a reasonable doubt, the appellate court 'must
view the evidence in a light most favorable to respondent and presume
in support of the judgment the existence of every fact the trier could
reasonably deduce from the evidence.' (*People* v. *Mosher* (1969) 1
Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Reilly, su-
pra*, 3 Cal.3d 421, 425.) The court does not, however, limit its review to
the evidence favorable to the respondent. As *People* v. *Bassett, supra*,
69 Cal.2d 122, explained, 'our task. . .is twofold. First, we must resolve
the issue in the light of the *whole record*—i.e., the entire picture of the
defendant put before the jury—and may not limit our appraisal to iso-
lated bits of evidence selected by the respondent. Second, we must
judge whether the evidence of each of the essential elements. . .is *sub-
stantial*; it is not enough for the respondent simply to point to "some"
evidence supporting the finding, for "Not every surface conflict of evi-
dence remains substantial in the light of other facts."' (69 Cal.2d at
p. 138.) (Fn. omitted.)" (*People* v. *Johnson, supra*, 26 Cal.3d at
pp. 576-577.) Finally, a jury may reject or give credence to any part of
a witness' testimony, since the credibility of witnesses is a question for
the finder of fact. (*People* v. *Aikens* (1969) 70 Cal.2d 369, 378 [74
Cal.Rptr. 882, 450 P.2d 258].)

■ Here, the primary issue was the identity of the man who sold the ring to the victims. Jack Howe positively identified appellant. Jack's father made a reasonably certain identification of appellant. The store's records supported this testimony. The jury was not required to give credence to testimony offered by defense witnesses which conflicted with that given by prosecution witnesses. In short, the verdict is supported by substantial evidence and is not to be disturbed on appeal.

During the trial the prosecutor decided to have dusted for fingerprints the Bienenfeld business card, which had already been received in evidence. Preliminary analysis showed that the card might show appellant's fingerprints. To prevent unfair surprise to the defense, the court precluded the prosecution from offering and using any evidence of fingerprints at trial. By the time of sentencing, however, analysis of the card had positively identified appellant's fingerprint on the card, and the probation report included this fact. In denying bail on appeal the trial court referred to the results of the analysis. Although the fingerprint evidence had no bearing on the sentencing decision (being pertinent only in buttressing the correctness of the jury's verdict of guilty) it may be assumed for the purpose of discussion that knowledge of the fingerprint evidence may have influenced the court in determining the defendant's sentence.

■ Appellant contends that the inclusion of this evidence in the probation report was improper. Penal Code section 1204 requires that: "The circumstances shall be presented by the testimony of witnesses examined in open court. . . . No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section." An exception to this rule is stated in section 1203. The probation officer shall report "upon the circumstances surrounding the crime and the prior history and record of the person. . . ." (Pen. Code, § 1203, subd. (b).) Appellant contends that the fingerprint evidence is not a circumstance surrounding the crime. Hence, the argument runs, the section 1203 exception does not apply, and the evidence should have been excluded from the probation report. Appellant says fingerprint evidence is "fundamental evidence" which "cannot be called a surrounding circumstance." Appellant cites no authority in support of his theory, and the distinction is not valid. In fact section 1203 "contemplates the inclusion of hearsay matter in the probation report." (*People* v. *Barajas* (1972) 26 Cal.App.3d 932, 939 [103 Cal.Rptr. 405].) If at the hearing the de-

fendant contends that the report contains unfair, untrue hearsay information, he should be given the opportunity to refute it. (Pen. Code, § 1204; *People* v. *Valdivia* (1960) 182 Cal.App.2d 145, at p. 149 [5 Cal.Rptr. 832].) Here, the trial court twice invited appellant to contest the information contained in the probation report, but there was no response.

Appellant cites two cases holding that unlawfully obtained evidence should be excluded from the probation report. (*People* v. *Belleci* (1979) 24 Cal.3d 879 [157 Cal.Rptr. 503, 98 P.2d 473]; *Verdugo* v. *United States* (9th Cir. 1968) 402 F.2d 599, cert. den. 402 U.S. 961 [29 L.Ed.2d 124, 91 S.Ct. 1623], cert. den. *sub nom. Turner* v. *United States* (1970) 397 U.S. 925 [25 L.Ed.2d 105, 90 S.Ct. 931].) The present case is to be distinguished in that the exclusion of the fingerprint evidence was based on avoidance of trial surprise, not illegality. There is no constitutional requirement that the information be excluded from the later probation report.

In *Williams* v. *New York* (1949) 337 U.S. 241 [93 L.Ed. 1337, 69 S.Ct. 1079], the defendant appealed after receiving a death sentence in light of additional information from a probation report. The Supreme Court held that at sentencing a judge can "exercise wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed," and "[h]ighly relevant ...is the possession of the fullest information possible concerning the defendant's life and characteristics." (*Williams* v. *New York, supra*, at pp. 246, 247 [93 L.Ed. at pp. 1341, 1342].) Here, the fingerprint evidence was properly included in the probation report and properly considered as a factor in sentencing.

The judgment is affirmed.

Caldecott, P. J., concurred.

**POCHÉ, J.**—I dissent.

The schism that exists within this panel with respect to the use of similar prior convictions for impeachment needs no reenactment. Students of such cleavage should be more than satisfied with *People* v. *Harris* (1980) 105 Cal.App.3d 204 [164 Cal.Rptr. 296].

What is novel about the majority opinion here is its dismissal of *People* v. *Burdine* (1979) 99 Cal.App.3d 442, 449 [160 Cal.Rptr. 375], as "not being supported by any reasoning or authority." Suffice it to note that the reasoning and authority in *Burdine* belong to the Supreme Court of California. All the *Burdine* decision purported to do was to follow the command of the California Supreme Court that similar and identical priors be treated identically. (*People* v. *Fries* (1979) 24 Cal.3d 222, 230 [155 Cal.Rptr. 194, 594 P.2d 19]; *People* v. *Spearman* (1979) 25 Cal.3d 107, 114 [157 Cal.Rptr. 883, 599 P.2d 74]. For further guidance see *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Here the charged crime of grand theft and the priors of burglary and receiving stolen property are "similar" in the important sense that they sound like what they are to any juror: members of the theft family. Nothing in the majority opinion challenges that characterization. Trained legal minds may be able to distinguish between and among them but jurors are not required to carry such legal equipment. For this and other reasons these similar prior convictions required "extreme caution" in handling. They didn't get it.

It is clear that the trial court erred in admitting these priors because each of them was similar to the offense for which appellant was on trial. This court admits "it cannot know what appellant's testimony would have been." Absent any basis for concluding that such testimony would not have affected the result, it is reasonably probable that a result more favorable to appellant would have been reached in the absence of this error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243]; *People* v. *Fries, supra,* 24 Cal.3d 222, 234.)

I would reverse the judgment.

A petition for a rehearing was denied August 12, 1980. Poché, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied October 1, 1980. Bird, C. J., was of the opinion that the petition should be granted.